Robert F. TIMMEL, Plaintiff-Appellant,

v.

Lyman PHILLIPS, M.D.,
Defendant-Appellee.

No. 86–1115
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 17, 1986.

W. David Allen, Washington, D.C., for plaintiff-appellant.

Kirk P. Watson, Daniel W. Bishop, II, Austin, Tex., for defendant-appellee.

Before CLARK, Chief Judge, GARWOOD, and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

The appeal of this malpractice suit involves a constitutional challenge to the jury selection procedure used in the United States District Court, Austin Division, of the Western District of Texas. Appellant Robert F. Timmel claims that the petit jury panel from which his jury was chosen was not fairly representative of a cross-section of the community,[1] and therefore the district court erred in not allowing an inquiry into the jury selection procedure. Finding no merit to Timmel's contentions, we affirm.

I.

In April 1981 appellee Dr. Lyman Phillips began treating Timmel for certain psychiatric problems by prescribing an antipsychotic drug, Trilafon. After Timmel developed tardive dyskinesia,[2] he instituted suit claiming that Dr. Phillips inappropriately

---

1. Initially, we note that it is not entirely clear which constitutional standard Timmel is relying on; that is, whether only the fair cross-section requirement, or a claim of discrimination in the jury selection process, or both. Timmel appears to be relying, for the most part, on the fair cross-section analysis established in *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979) and *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). However, he also cites *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977) (a case addressing discriminatory exclusion from jury service), as authority for developing the fair cross-section standard, as well as for being part of the test to establish a prima facie case of a violation of the constitutional fair cross-section requirement.

While in some respects there is not much difference between the two analyses, see, e.g., *Davis v. Zant*, 721 F.2d 1478, 1482 (11th Cir. 1983), there are differences that are fatal to Timmel's attempt to use the *Castaneda* line of decisions to establish a constitutional violation. First, we have held that in order to come within the *Castaneda* rule "the defendant [must] dem-

onstrate intentional discrimination." *United States v. Wesevich*, 666 F.2d 984, 990 (5th Cir. 1982). *See also United States v. Brummitt*, 665 F.2d 521, 527 (5th Cir.1981) ("*Castaneda* requires the showing of some form of *intentional* discrimination.") (emphasis in original), *cert. denied*, 456 U.S. 977, 102 S.Ct. 2244, 72 L.Ed.2d 852 (1982). There has been no such showing here. Moreover, the *Castaneda* prima facie test requires an examination of the underrepresentation "over a significant period of time." *Castaneda*, 430 U.S. at 494, 97 S.Ct. 1272, 51 L.Ed.2d at 510. Timmel does not meet this requirement by only citing his jury venire as an example of underrepresentation.

Therefore, we conclude that the *Castaneda* standard is not available, if Timmel in fact was relying on that decision. Accordingly, we only consider his claim to be one of a violation of the fair cross-section standard.

2. The symptoms of this disease include abnormal, constant and apparently meaningless repetition of involuntary movements involving the proximal parts of limbs and also affecting the mouth and face.

prescribed Trilafon and failed to inform Timmel of certain possible side effects of the drug.

The trial was set before a six person jury. Five days prior to the trial a secretary for Timmel's counsel attempted to obtain a list of potential jurors from which the jury would be selected. The judge's courtroom clerk denied the request, which he was required to do by the Amended Plan Providing for Random Selection of Grand and Petit Jurors in the Western District of Texas (the "Plan").[3]

On the morning of the trial, in accordance with the Plan, the list of prospective jurors was given to counsel. Thirty names were on the list; six of those named were either absent or excused. The remaining twenty-four persons included nineteen men and five women. Although the record contains no transcript of the voir dire or the jury selection process, it apparently proceeded without incident. Both counsel for Timmel and counsel for Dr. Phillips exercised their peremptory challenges, with the jury then being selected and the trial beginning thereafter. Neither prior to the voir dire of the jury panel nor at any other time prior to the verdict returned in favor of Dr. Phillips was any question raised regarding the jury selection process. Only after the verdict was returned did Timmel object to the procedures used to select the panel.

Following the trial, Timmel filed a motion to inquire into the jury selection procedures with a contingent motion for a new trial. The district court denied the motion, noting, however, that Timmel was free to make another separate motion for a new trial. Subsequently, Timmel made a motion for a new trial based on his allegation that there was a systematic exclusion of sexual and ethnic groups from the jury pool. The district court also denied that motion.

Timmel now appeals raising one issue: whether a district court is required to permit a party to inquire into the jury selection procedures where the panelists from which the jury was chosen is markedly unrepresentative of the community from which the panelists were chosen. Timmel argues that the question should be answered in the affirmative because he has established a prima facie case of a violation of the constitutionally protected right to a jury that is fairly representative of the general community.

## II.

The only way for Timmel to prevail at this appeal is to establish a violation of his constitutionally protected right to a petit jury selected from a fair cross-section of the community.[4] To establish a prima facie

---

3. The Plan is set forth as Appendix D to the Local Rules of the United States District Court for the Western District of Texas. Regarding the disclosure of juror names, the Plan provides:

  In each division of this district, the names of prospective grand jurors and/or petit jurors drawn from the Qualified Jury Wheel shall not be disclosed prior to the date of appearance and qualification of such jurors, unless otherwise directed in a division by the Chief Judge of this district, or by the judge assigned by the Chief Judge to that particular division by appropriate order; provided, however, the Court in any case may keep such names confidential for such period of time as the interest of justice may require. "Shall be disclosed" means shall be kept on file with the Clerk of the Court as a public paper.

4. *See supra* note 1. Timmel has expressly denied relying on a statutory challenge to the jury selection process provided in 28 U.S.C. § 1867

(1986). This section sets the time limit on challenges to jury selection procedures:

  (c) In civil cases, before the voir dire examination begins, or within seven days after the party discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, any party may move to stay proceedings on the ground of substantial failure to comply with the provisions of this title in selecting the petit jury.

However, this section also provides that constitutional remedies are not excluded:

  (e) The procedures prescribed by this section shall be the exclusive means by which a person accused of a Federal crime, the Attorney General of the United States or a party in a civil case may challenge any jury on the ground that such jury was not selected in conformity with the provisions of this title. Nothing in this section shall preclude any person or the United States from pursuing any other remedy, civil or criminal, which may be available for the vindication or en-

violation of the fair cross-section requirement, Timmel must show the following three elements:[5]

    (1) that the group alleged to be excluded is a 'distinctive' group in the community;

    (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and

    (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

*Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579, 587 (1979). If Timmel fails to demonstrate any of these elements, he has failed to establish a prima facie violation of the constitutionally protected fair cross-section requirement. *See United States v. Pepe,* 747 F.2d 632, 649 (11th Cir.1984). Since Timmel's proffered evidence does not establish all three elements, he has failed to show a constitutional violation.

The Supreme Court has definitively established that women are a distinctive group in the community. *See, e.g., Duren,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Timmel's contention that women were underrepresented on his jury venire thus satisfies the first element of *Duren.* As to the second element, however, it was incumbent on Timmel to prove that "the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community." *Duren,* 439 U.S. at 364, 99 S.Ct. at 668, 58 L.Ed.2d at 587. "[I]n order to establish a prima facie case, it [is] necessary for petitioner to

show that the underrepresentation of women, *generally and on his venire,* was due to their systematic exclusion...." *Id.* at 366, 99 S.Ct. at 668–69, 58 L.Ed.2d at 588 (emphasis added). Timmel must demonstrate, then, not only that women were not adequately represented on his jury venire but also that this was the general practice in other venires.

Whether Timmel demonstrated that women were not fairly represented on his jury venire does not need to be addressed because he has presented no evidence as to the representation of women on jury venires in general. Merely showing one case of alleged underrepresentation does not rise to a "general" underrepresentation that is required for establishing a prima facie case. Those Supreme Court cases that have addressed the issue have examined the selection process of a number of jury venires over a period of time. *See, e.g., Duren,* 439 U.S. at 366, 99 S.Ct. at 669, 58 L.Ed.2d at 588 (reviewing the discrepancies both over a period of nearly a year and in the Petitioner's specific case); *Taylor,* 419 U.S. at 524, 95 S.Ct. 692, 42 L.Ed.2d at 694 (examining a time period of almost one year). Since Timmel has only provided his one jury venire as an example of an underrepresentative panel, we find that he has not met the second *Duren* element needed to establish the prima facie case.

The fact that Timmel only cites his particular venire composition is also indicative of a failure to satisfy the third element: proving systematic exclusion. To satisfy this prong it must be shown that the underrepresentation was inherent in the particu-

forcement of any law prohibiting discrimination on account of race, color, religion, sex, national origin or economic status in the selection of persons for service on grand or petit juries.

Since Appellant first raised the issue of an unrepresentative jury panel after the voir dire, he waived his statutory right to do so. Thus, the only recourse for Appellant at this point is to establish a prima facie case of a violation of the constitutional right to a jury selected from a fair-cross section of the community.

5. The tradition of trial by an impartial jury drawn from a cross-section of the community applies to both civil and criminal proceedings. *Thiel v. Southern Pacific Co.,* 328 U.S. 217, 220, 66 S.Ct. 984, 985–86, 90 L.Ed. 1181, 1184 (1946). Thus, although the standard for determining whether there has been a violation of the proper jury selection requirement was developed in the context of criminal cases, we assume, without deciding, that the fair cross-section requirement is similarly required by the Constitution in civil cases.

lar jury-selection process utilized. *Duren*, 439 U.S. at 366, 99 S.Ct. at 669, 58 L.Ed.2d at 588. One incidence of a jury venire being disproportionate is not evidence of a "systematic" exclusion. For example, in *Duren*, the Court found that the Petitioner's "demonstration that a large discrepancy occurred *not just occasionally* but in every weekly venire for a period of nearly a year manifestly indicates that the cause of the underrepresentation was systematic...." 439 U.S. at 366, 99 S.Ct. at 669, 58 L.Ed.2d at 588 (emphasis added). Thus, a one time example of underrepresentation of a distinctive group wholly fails to meet the systematic exclusion element in *Duren*.

Moreover, the procedures used in the jury selection process are clearly set forth in the Plan for jury selection. The Plan was adopted pursuant to the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861–1871, and states as its policy the selection of grand and petit juries at random from a cross-section of the community. The Plan achieves this goal by selecting names of prospective jurors from voter registration lists. Without any evidence to the contrary, such a jury selection plan, designed to provide for the selection of jurors from a fair cross-section of the community, must be presumed to do so.

We find that the district court properly denied Timmel's motions to inquire into the jury selection procedures and the contingent motion for a new trial; the court's ruling is accordingly

AFFIRMED.