**Leo E. EDWARDS, Jr.,**
**Petitioner-Appellant,**

v.

**Gene A. SCROGGY, Commissioner, Mississippi Department of Corrections, et al., Respondents-Appellees.**

No. 87–4553.

United States Court of Appeals, Fifth Circuit.

July 15, 1988.

Opinion on Denial of Rehearing and Rehearing En Banc Aug. 17, 1988.

Kenneth J. Rose and Dennis C. Sweet, Jackson, Miss. (court-appointed), Owens & Owens, Jackson, Miss., for petitioner-appellant.

Marvin L. White, Jr., Asst. Atty. Gen., Felicia C. Adams, Asst. Atty. Gen., Jackson, Miss., William S. Boyd, III, Special Counsel, Gulfport, Miss., for respondents-appellees.

Before CLARK, Chief Judge, WILLIAMS, and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Petitioner, Leo E. Edwards, appeals from the denial of his habeas corpus petition under 28 U.S.C. § 2254. He is under sentence of death on his conviction for murder committed in the course of an armed robbery. Following two thoughtful opinions dealing with Edwards' habeas claims, *see Edwards v. Thigpen*, 595 F.Supp. 1271 (S.D.Miss.1984) and 682 F.Supp. 1374 (S.D. Miss. 1987), the district court granted a stay of execution and a certificate of probable cause to appeal. After thorough consideration of petitioner's contentions, we affirm the denial of the writ of habeas corpus and vacate the stay of execution.

## I.

The petitioner was convicted in the First Judicial District of the Seventh Circuit Court District of Mississippi of capital murder, and pursuant to the jury's recommendation he was sentenced to be executed. The conviction and sentence were affirmed by the Mississippi Supreme Court. *Edwards v. State*, 413 So.2d 1007 (Miss.), *cert. denied*, 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982). Appellant's application for leave to file a petition for writ of error coram nobis in the Mississippi Supreme Court was denied. *Edwards v. Thigpen*, 433 So.2d 906 (Miss.1983).

## II.

Edwards was convicted for the June 14, 1980 murder of Lindsey Don Dixon, a convenience store clerk in Jackson, Mississippi. The state introduced evidence from which the jury could have concluded that Edwards held up Dixon at gunpoint and then shot him so that Dixon could not identify him. Edwards came to the attention of the Jackson police the following day when they investigated a complaint that a man was threatening a woman at gunpoint. Edwards proved to be the object of this complaint, and the investigating officer confiscated the weapon in Edwards' possession. Ballistics tests established that the shot that killed Dixon was fired from the confiscated pistol. This evidence, together with the testimony of Edwards' co-indictee, Mikel Leroy White, was the principal evidence adduced against Edwards at the guilt phase of the trial.

During the sentencing phase of the trial, the state introduced evidence of a number of earlier convictions entered against Edwards. The state also introduced evidence that at the time of Dixon's murder Edwards was at large as an escapee from the Louisiana State Penitentiary. Edwards called two witnesses in the sentencing phase, his mother and a Catholic priest. The jury recommended a death sentence after finding the following statutory aggravating circumstances:

(1) the capital murder was committed while the Defendant was engaged in the commission of a robbery; (2) the capital murder was committed for pecuniary gain; (3) the capital murder was committed for the purpose of avoiding lawful arrest; (4) the capital murder was committed by the Defendant while under sentence of imprisonment; (5) the capital murder was committed by the Defendant who was previously convicted of a felony involving the use or threat of violence to the person; (6) another capital murder was committed by the Defendant.

Appellant asserts a number of constitutional violations in his trial, conviction, and sentence, each of which he contends justifies granting the writ. We shall consider each argument in turn.

## III.

### A.

#### The *Swain* Claim

For his first claim, the petitioner asserts that Ed Peters, the prosecuting district attorney for the Seventh Circuit Court District of Mississippi, uses the state's allotted peremptory challenges to systematically exclude blacks from juries in violation of the fourteenth amendment. Following a period of discovery, the district court held a hearing and rejected petitioner's claim.

At the outset, we agree with the district court that the rule established in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), governs this case. Although the Supreme Court in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), drastically changed the ground rules for the state's exercise of peremptory challenges, the Court announced that *Batson* is not to apply retroactively to cases pending federal habeas corpus review at the time of the decision, *Allen v. Hardy*, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199, 204–06 (1986), or to cases in which the appeals process has been completed, *see Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed. 2d 649, 661–62 (1987). In *Smith v. McCotter*, 798 F.2d 129, 132 (5th Cir.1986), we held that *Batson* does not apply retroactively in capital cases.

We now turn to a review of petitioner's claim under the standard established in *Swain v. Alabama*. The district court held a hearing on this claim in which the facts

were fully ventilated. The petitioner, Leo Edwards, was tried and convicted by an all-white jury in the circuit court for the First Judicial District of Hinds County, Mississippi. Ed Peters has served as the district attorney for this district since 1972. Peters was quoted in a newspaper article in July of 1983 as saying that when he was presented with blacks on a jury panel his philosophy was to "get rid of as many" as he could. This article caught the attention of defense counsel in this case and others, and Peters was later deposed. In his deposition and testimony at the hearing, Peters stated that he had a philosophy of striking the black juror when presented with a choice between a white and black juror and all other factors were equal. Mr. Peters explained that his experience in the trial of criminal cases had taught him that blacks were more sympathetic to the defense than white jurors are.

Discovery on this issue revealed that the district attorney's office had kept records of important facts bearing on jury selection in 242 criminal cases tried in the First Judicial District and that the trial judge who presided over the majority of the criminal trials in that district kept his own records in 76 additional cases. All of these records had complete jury lists reflecting the names and races of the potential jurors, the peremptory strikes exercised by both the prosecution and the defense, and the racial composition of the jury selected in each case. These records covered 318 criminal trials (approximately half of the cases tried during this period) from 1976 to 1985. Summary sheets were submitted in evidence and served as raw data for experts called by both sides at the hearing.

The two experts agreed on the substance of the statistical data but drew different conclusions as to its significance. The evidence revealed that the voter registration rolls from which the jury lists were drawn reflected a registered voter population that was 64.13% white and 33.94% black. Based upon a composite of the available data, the parties agreed that: (1) the preperemptory strike pool venire was 62.3% white and 37.7% black; (2) the jury composition in the cases tried was 71.4% white and 28.6% black; (3) this percentage varied slightly depending upon whether a black defendant was on trial (black defendant: 72.2% white, 27.8% black; white defendant: 68.3% white, 31.17% black); and (4) the jury composition in all cases that District Attorney Peters tried personally was virtually the same as the composite figure in our second observation above.[1]

1. A more complete statement of the statistical data agreed to by the parties follows:

A. *Venire, Pre-peremptory Strike Pool*
Total–8591 Jurors (100%)
White–5355 Jurors (62.3%)
Black–3236 Jurors (37.7%)

B. *Jury Composition—All Cases Studied*
Total–3814 Jurors (100%)
White–2726 Jurors (71.4%)
Black–1090 Jurors (28.6%)

C. *Jury Composition—Capital Crimes*
Total–1932 Jurors (100%)
White–1440 Jurors (74.5%)
Black–492 Jurors (25.5%)

D. *Jury Composition—Black Defendants*
Total–2926 Jurors (100%)
White–2114 Jurors (72.2%)
Black–812 Jurors (27.8%)

E. *Jury Composition—White Defendants*
Total–627 Jurors (100%)
White–426 Jurors (68.3%)
Black–198 Jurors (31.7%)

F. *Jury Composition—D.A. Peters as Prosecutor*
Total–732 Jurors (100%)
White–524 Jurors (71.6%)
Black–208 Jurors (28.4%)

PROSECUTORS' PEREMPTORY STRIKES BY RACE

G. *Total Prosecutor's Strikes*
Total–2397 (100%)
White–496 (20.7%)
Black–1901 (79.3%)

H. *Prosecutors' Strikes in Capital Crimes*
Total–1575 (100%)
White–359 (22.8%)
Black–1216 (77.6%)

I. *Prosecutors' Strikes with Black Defendants*
Total–1851 (100%)
White–343 (18.5%)
Black–1508 (81.5%)

J. *Prosecutors' Strikes with White Defendants*
Total–388 (100%)
White–125 (32.2%)
Black–263 (67.8%)

K. *Prosecutors' Strikes with D.A. Peters as Prosecutor*
Total–574 (100%)
White–135 (23.5%)
Black–439 (76.5%)

Dr. Allen Lichtman testified as an expert for Edwards. He concluded that the statistical information revealed that the prosecutors in this judicial district depressed the proportion of black persons serving on juries by use of the peremptory challenge. The data revealed a 9% actual or mean difference between the percentage of blacks on the venire panel (37%) and the percentage of blacks serving on juries (28%). Dr. Lichtman concluded that the prosecutors' different treatment of black and white veniremen was racially motivated.

The state's expert witness, Dr. Claude Rowland, focused on the evidence that approximately 29% of all jurors serving in this district were black. According to Dr. Rowland, this percentage was not grossly disproportionate to the percentage of blacks registered to vote in the district—34%—or the number of blacks on the pre-peremptory venire panel—38%. Dr. Rowland concluded that blacks were not disenfranchised from serving on juries. Dr. Rowland also found significant the number of occasions when the prosecutors challenged whites and left blacks on the venire. Dr. Rowland's analysis revealed that the prosecutor had an average of 1.9 of these "foregone opportunities" to strike black jurors in each case.

District Attorney Peters testified that on the average blacks are less law-enforcement oriented than whites. He attributes this to their socioeconomic background as well as a history of oppression. He testified that he sometimes accepts black jurors in all types of cases. Peters testified nonetheless that if he is faced with a choice of striking a black venireman or a white venireman and there is no specific reason to exclude either, he excludes the black. The district court found no evidence that Peters is a racist; it was persuaded that Peters challenged a disproportionate number of black prospective jurors because of a sincerely held belief that a black juror was ordinarily less sympathetic to the prosecutor and to law enforcement officials than a white one.

The district court held that the petitioner established a prima facie case of systematic exclusion of black jurors, but that the state rebutted the prima facie case. The rebuttal rested on two facts. First, approximately 28% of all jurors were black. Second, the prosecution established racially neutral reasons for exercising peremptory challenges against blacks in this case. The district court for those reasons rejected Edwards' claim.

■ We agree that the district court correctly rejected petitioner's claim. We hold, however, that the evidence fails to establish a prima facie case of systematic exclusion of blacks from the jury by the state under *Swain*.

In *Swain v. Alabama*, the Court held in Part II of its opinion that a prosecutor's challenges, when made for the purpose of prevailing in the particular case being tried, would not violate the defendant's constitutional rights even if the challenges were racially motivated:

> The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control.... It is no less frequently exercised on grounds normally thought irrelevant to legal proceedings or official action, namely, the race, religion, nationality, occupation or affiliations of people summoned for jury duty. For the question a prosecutor or defense counsel must decide is not whether a juror of a particular race or nationality is in fact partial, but whether one from a different group is less likely to be....
>
> With these considerations in mind, we cannot hold that the striking of Negroes in a particular case is a denial of equal protection of the laws. In the quest for an impartial and qualified jury, Negro and white, Protestant and Catholic, are alike subject to being challenged without cause.

*Swain*, 380 U.S. at 220–21, 85 S.Ct. at 835–36 (footnotes and citations omitted); *see United States v. Leslie*, 783 F.2d 541 (5th Cir.1986) (en banc).

The Court in *Swain* did suggest, however, in Part III of the opinion that it was improper for prosecutors to "consistently and systematically exercise[ ] their strikes to prevent any and all Negroes on petit jury venires from serving on the petit jury itself." *Swain*, 380 U.S. at 223, 85 S.Ct. at 837.

The critical question for decision in this case is whether petitioner's proof established the systematic, broad-based exclusion with which the Supreme Court was concerned in Part III of *Swain*.

The Court defined in some detail the nature and scope of the systematic exclu-

sion the petitioner is required to establish to obtain relief under Part III:

> But when the prosecutor in the county, in case after case, whatever the circumstances, whatever the crime, and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries, the Fourteenth Amendment claim takes on added significance....
> Such proof might support a reasonable inference that Negroes are excluded from juries for reasons wholly unrelated to the outcome of the particular case on trial and that the peremptory system is being used to deny the Negro the same right and opportunity to participate in the administration of justice enjoyed by the white population.

*Id.* at 223–24, 85 S.Ct. at 837–38 (citation omitted).

In *Swain* the record revealed that no black had ever served on a petit jury in a civil or criminal case in Talledega County, Alabama. The record, however, did not reveal the extent to which this absence of blacks on juries was the state's responsibility. The Court concluded that because the record did not reveal the role of the prosecutor in excluding blacks, the petitioner had failed to lay the proper predicate for proof of systematic exclusion of blacks from jury service.

We agree with the district court that, unlike the *Swain* case, the proof presented here is sufficient to demonstrate the practice of both prosecutors and defense counsel in challenging potential black jurors in the First Judicial District. The data introduced at the hearing included this information in 318 trials over a nine-year period. This is an adequate pool of information to decide whether a *Swain* violation has been established. We turn to that question.

■ The Court in *Swain* made it exceedingly difficult for a defendant to establish a fourteenth amendment violation predicated on the state's systematic exclusion of blacks from jury service through the exercise of its peremptory challenges. The Court required a showing that in the particular jurisdiction the prosecutors "consistently and systematically" exercise their challenges to prevent "any and all" blacks on jury panels from serving on petit juries. *Id.* at 223, 85 S.Ct. at 837. The Court stated that if "... no Negroes ever serve on petit juries the fourteenth amendment takes on added significance." *Id.* And again, "if the state has not seen fit to leave a single Negro on any jury in a criminal case the presumption ... may be overcome." *Id.* at 224, 85 S.Ct. at 838.[2]. We are persuaded that Edwards' proof does not make out a prima facie case of systematic exclusion of black jurors under *Swain*. Juries in the district during the period in question were 28.6% black. This figure falls only 9% short of the percentage of jurors in the pre-peremptory strike pool and slightly over 5% short of the number of blacks who were registered to vote in the district. *See United States v. McDaniels*, 379 F.Supp. 1243 (E.D.La.1974). Because the proof fails to measure up to the bright line test established by *Swain*, this claim must be rejected.[3]

### B.

### Prosecutorial Misconduct

■ Edwards asserts next that the prosecutor's argument at the sentencing proceeding was inflammatory and rendered that proceeding fundamentally unfair.[4] Edwards points to four statements by the prosecutor that he contends were improper.

---

**2.** See also Sullivan, Deterring the Discriminatory Use of Peremptory Challenges, 21 Am.Crim. L.Rev. 477 (1984); Note, 92 Harv.L.Rev. 1770 (1979).

**3.** For reasons advanced by the court en banc in *United States v. Leslie*, 783 F.2d 541, 549–61 (5th Cir.1986) (en banc), we also reject petitioner's claim that the state's racially based peremptory challenges violated rights secured to him by the sixth amendment.

**4.** The state argues that the district court erred in declining to respect the Mississippi Supreme Court's determination that this claim, which was not raised on direct appeal, was procedurally barred under Mississippi law. The district court held that the procedural bar invoked by the Mississippi Supreme Court would not preclude consideration of Edwards' federal habeas claims because the Mississippi Supreme Court had established a practice of addressing the merits of issues raised on post-conviction petitions for writ of coram nobis in capital cases even if the issue had not been raised on appeal. Because the Mississippi Supreme Court departed from its usual practice in this case the district court, for reasons adequately stated in its opinion, correctly considered the merits of this claim. *See Edwards*, 595 F.Supp. at 1277–79.

First, Edwards asserts that the prosecutor misstated the law when he argued to the jury that "the Supreme Court has said: 'We admit we were wrong. We did away with the death penalty but we admit we were wrong.'" Edwards argues that the prosecutor improperly implied that the Supreme Court reestablished the death penalty and, in doing so, admitted that it had been wrong in striking down certain death penalty statutes.

Edwards complains next that the prosecutor improperly gave his personal opinion when he agreed that aggravating circumstances "just don't get any worse than this." He also argues that the prosecutor's statement that he did not seek capital punishment for Edwards' codefendant, Mikel White, was designed to convey to the jury that the prosecutor concluded that Edwards rather than White was the triggerman. Edwards also argues that the prosecutor's statements that "all of our evidence indicated that Edwards was the triggerman" denied Edwards a fundamentally fair sentencing proceeding because it was unsupported by the record.

Edwards next asserts that the prosecutor improperly argued to the jury that a life sentence for Edwards was too expensive for the public.[5] Edwards asserts that cost is an unacceptable and indeed illegitimate justification for the death penalty.

Finally, Edwards argues that the prosecutor sought to inflame the jurors by invoking images of the victim's family.[6]

■ We agree with Edwards that two of the prosecutor's statements were not invited by defense counsel and were improper. The argument that the Supreme Court admitted that it had been wrong in invalidating certain death penalty statutes was an inexcusable misstatement of the law. The prosecutor was also out of bounds in suggesting that taxpayers would save money if the jury recommended the death penalty. *See Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983).

The Supreme Court in *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), considered in detail the scope of review of a federal habeas court in considering improper closing argument by the prosecutor. The court stated: "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' ... Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process and not the broad exercise of supervisory power.'" *Id.* 477 U.S. at 180–81, 106 S.Ct. at 2471–72, 91 L.Ed.2d at 157 (quoting *Donelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).

■ The two arguments of the prosecutor referred to above, although improper, were neither persistent nor pronounced. The prosecutor in both instances made a single improper reference and moved on to another subject. As we stated in *Felde v. Blackburn,* 795 F.2d 400, 403 (5th Cir. 1986), *cert. denied,* 108 S.Ct. 210, 98 L.Ed.2d 161 (1987), "To establish that a prosecutor's remarks are so inflammatory as to prejudice the substantial rights of a defendant, the petitioner must demonstrate either persistent and pronounced misconduct or that the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred." The remarks of the prosecutor in this case simply do not measure up to that standard. The district court correctly rejected habeas relief on this claim.

---

**5.** District Attorney Peters argued in rebuttal:
What's the other reason for not giving this defendant the death penalty? That, if he gets a life sentence for murder, why he'll be up there at Parchman and won't see daylight for ten years. Do you believe that? Do you believe they're going to put him in some hole and he isn't gonna see daylight for ten years? Or do you believe he's gonna go up there and watch television and live off the taxpayers' money for ten years? And get fed and housed and given all the conveniences of life. For what. For killing him (Mr. Peters holding up exhibit [of victim]).
Trial transcript at 710.

**6.** The argument to which Edwards objects is as follows:
They'll never convince [the victim] [Edwards is] still in jail (Mr. Peters holding exhibit [of victim] up). They'll never convince his fiance [sic] he's still in jail. Nor his mother, nor his daddy, nor all of the people that can't get up here and testify for him.... So don't just say: "Putting him in jail is enough."
Trial transcript at 712–13.

## C.

### Erroneous Admission of a Misdemeanor Conviction In the Sentencing Phase

■ Appellant contends that his sentence should be set aside because the state introduced a prior misdemeanor conviction for carrying a concealed weapon that belonged to his father rather than to him.

In addition to the above misdemeanor, the state introduced a number of felony convictions from Louisiana courts, including three theft convictions and one for robbery. In 1976 a Louisiana court sentenced Edwards to three years imprisonment as an habitual felony offender. In 1978 he received a six-year sentence for burglary. In February 1980 Edwards escaped from the custody of the Louisiana Department of Corrections, and a warrant was issued for his arrest. The state also introduced the judgment of Edwards' February 12, 1981 murder conviction in Hinds County, Mississippi, for which he received a life sentence.

Considering the extent of Edwards' criminal record, it is inconceivable that the erroneously admitted misdemeanor conviction of carrying a concealed weapon affected the jury's decision.

Petitioner argues further that once evidence of this conviction is disregarded the state has no evidence to support one of the aggravating circumstances found by the jury: commission of capital murder by one who had previously been convicted of a felony involving the use or threat of violence to the person. Assuming that the misdemeanor conviction of carrying a concealed weapon is necessary to support the jury's finding of this aggravating circumstance, appellant's argument nevertheless must fail. The Court in *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), held that the invalidation of one

aggravating circumstance did not require the vacation of the death penalty so long as there were other valid aggravating circumstances remaining.[7] The jury in this case found six aggravating circumstances and the invalidation of one of them would not require vacation of the death sentence. *See Rault v. Butler*, 826 F.2d 299 (5th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 14, 97 L.Ed.2d 803 (1987); *Celestine v. Butler*, 823 F.2d 74 (5th Cir.1987); *Evans v. Thigpen*, 809 F.2d 239 (5th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 3278, 97 L.Ed.2d 782 (1987). The district court correctly rejected this claim.

## D.

### Erroneous Exclusion of Mitigating Evidence

■ Edwards next argues that the trial court improperly excluded mitigating evidence in violation of *Eddings v. Oklahoma*, 455 U.S. 104, 114, 102 S.Ct. 869, 876–77, 71 L.Ed.2d 1 (1982).

Edwards presented mitigating evidence through the testimony of two witnesses, his mother and Father Henry Shelton, a Catholic priest. Mrs. Edwards testified in some detail about her son's childhood, his upbringing, and the relationship she and Edwards' father had with their son. She testified that he was an attentive, supportive, loving child. The district court sustained the prosecutor's objections to questions designed to elicit direct statements Edwards made to his mother that he was sorry for his participation in the murder. The court also excluded Edwards' alleged statement to his mother that if his life were spared he would serve God the rest of his life.

Father Shelton testified that Edwards, who is Catholic, asked to see a priest in

---

7. *Maynard v. Cartwright*, —— U.S. ——, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), just decided by the Supreme Court does not undermine this conclusion. In *Maynard*, the petitioner was sentenced to death following a finding by an Oklahoma jury of two statutory aggravating circumstances: "an especially heinous, atrocious, or cruel" murder and the defendant "knowingly created a great risk of death to more than one person." The Supreme Court determined that the first aggravating circumstance was invalid; the second remained unchallenged. The Court, however, instead of reinstating the death penalty, approved a remand of the case to the Oklahoma Court of Criminal Appeals. But the opin-

ion makes it clear that the Court approved this remand because Oklahoma law was unclear on whether the sentence of death should be set aside if one of the aggravating circumstances was found invalid and others remained unchallenged. Consequently, the case was remanded to the Oklahoma court to determine as a matter of state law whether the sentence should be set aside. Unlike Oklahoma law, however, Mississippi law is clear that one invalid aggravating circumstance will not suffice to overturn a death penalty where other valid aggravating circumstances remain. *Edwards v. State*, 441 So.2d 84, 89, 92 (Miss.1983).

order to confess. Father Shelton testified that he was comfortable in Edwards' presence, that he had no fear of him, and that Edwards exhibited no hostility toward him. He testified that Edwards was gentle and soft spoken and that he sensed a "goodness" about Edwards. He testified further that based upon his two- to three-hour meeting with Edwards he believed that Edwards realized that he "messed up his life in the past and he was sorry for that and he wants to do something with his life in the future in a very constructive way. Not just for Leo but for others. I really feel that strongly." The only testimony that was excluded related to direct statements Edwards made to Father Shelton about the type of work Edwards wanted to do in prison if his life were spared.

Petitioner argues that the trial court applied the rules of evidence, particularly the hearsay rule, "mechanistically to defeat the ends of justice." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973). The appellant relies on *Green v. Georgia*, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979) (quoting *Chambers*), but it does not support his argument. In *Green* the Georgia trial court excluded a witness' testimony that Green's codefendant stated that he and not Green committed the murder. The Court, in reversing the Georgia Supreme Court, stated:

> Regardless of whether the proffered testimony comes within Georgia's hearsay rule, under the facts of this case its exclusion constituted a violation of the Due Process Clause of the Fourteenth Amendment. The excluded testimony was highly relevant to the critical issue in the punishment phase of the trial ... and substantial reasons existed to assume its reliability.

*Id.* at 97, 99 S.Ct. at 2151–52 (citations omitted).

In *Barefoot v. Estelle*, 697 F.2d 593, 597 (5th Cir.), *aff'd*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed. 1090 (1983), we made the following comment about *Green*'s holding: "We think that *Green* is limited to its facts, and certainly did not federalize the law of evidence. It does, however, indicate that certain egregious evidentiary errors may be redressed by the due process clause."

We agree with the district court that unlike *Green*, the State of Mississippi's application of its hearsay rule to exclude the evidence proffered in this case was not unnecessarily limiting, nor did it operate to render Edwards' trial fundamentally unfair. The district court correctly rejected habeas relief on this claim.

### E.

### Edwards' Other Claims

We have also carefully reviewed Edwards' contention that the district court erred in rejecting relief on two additional claims: The trial court gave inadequate guidance to the jury on its option to return a life sentence and ineffective assistance of counsel. For reasons assigned by the district court in its careful opinion, we agree that relief was properly denied on these two claims. *See Edwards*, 595 F.Supp. at 1286, 1290.

### IV.

For the reasons stated above, we affirm the judgment of the district court dismissing Edwards' petition for habeas relief and vacate the stay of execution entered by the district court.

**AFFIRMED. STAY VACATED.**

## ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC

**PER CURIAM:**

In his petition for rehearing, Leo E. Edwards contends that this court's decision directly conflicts with the United States Supreme Court's recent decision in *Johnson v. Mississippi*, —— U.S. ——, 108 S.Ct. 1981, 1985–87, 100 L.Ed.2d 575 (1988). Petitioner argues that *Johnson* requires that we vacate his sentence because of the erroneous admission of the misdemeanor conviction for carrying a concealed weapon in the sentencing phase of his trial. We disagree.

In *Johnson*, evidence of an earlier New York felony conviction for second degree assault with intent to commit first degree rape was admitted in the sentencing phase of the trial. This conviction was later vacated following the successful prosecution of post-conviction proceedings. In remanding Johnson's case to the Mississippi Supreme Court for a new sentencing determination, the Supreme Court held: "It is apparent that the New York conviction provided no legitimate support for the death sentence imposed on petitioner. It is equal-

ly apparent that the use of that conviction in the sentencing hearing was prejudicial." 108 S.Ct. at 1986–87. The Court further noted that: "Here the jury was allowed to consider evidence that has been revealed to be *materially* inaccurate." 108 S.Ct. at 1989 (emphasis added).

The Court's determination in *Johnson* that evidence of the earlier felony conviction was a material inaccuracy and operated to Johnson's prejudice at his sentencing hearing distinguishes *Johnson* from the instant case. We remain convinced that "considering the extent of Edwards' criminal record, it is inconceivable that the erroneously admitted misdemeanor conviction of carrying a concealed weapon affected the jury's decision." Panel op. at 211.

The application for panel rehearing is DENIED and no member of this panel nor judge in regular active service on the court having requested that the court be polled on rehearing en banc, (Federal Rules of Appellate Procedure and Local Rule 35) the suggestion for rehearing en banc is DENIED.