**REVISED - August 9, 1999**

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 98-20375
_____

GLEN CHARLES MCGINNIS,

                              Petitioner-Appellant,

versus

GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

                              Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Texas

July 20, 1999

Before WIENER, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

        Petitioner Glen Charles McGinnis appeals the district court's dismissal of his petition for

habeas relief under 28 U.S.C. § 2254.  We affirm.

I

        A jury in Montgomery County, Texas, found McGinnis guilty of capital murder while

committing a robbery.  At the punishment phase, the jury found that McGinnis acted deliberately, that

he was a continuing threat to society, and that there were not sufficient mitigating circumstances to

warrant a sentence of life imprisonment.  Accordingly, the state trial court imposed a sentence of

death.  The Texas Court of Criminal Appeals upheld McGinnis's conviction and sentence on direct

appeal, and the United States Supreme Court denied McGinnis a writ of _certiorari_.

        McGinnis then filed a petition for a writ of habeas corpus in Texas state court.  The trial court

issued findings of fact and conclusions of law, recommending that McGinnis's habeas corpus petition

be denied. The Texas Court of Criminal Appeals denied McGinnis's petition based on the trial court's findings. Finally, McGinnis filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in federal district court. The district court granted the government's motion for summary judgment, and entered final judgment denying McGinnis's § 2254 petition.

McGinnis requested a certificate of appealability ("COA") from the district court. The district court granted McGinnis a COA on two issues: (1) whether the state trial court's excusal of three African-American venirepersons violated the Sixth and Fourteenth Amendments to the United States Constitution, and (2) whether the state trial court denied McGinnis due process under the Fourteenth Amendment by excluding certain evidence from the punishment phase of his trial.

II

We review summary judgment rulings *de novo*, applying the same standard applied by the district court. *See Alton v. Texas A&M Univ.*, 168 F.3d 196, 199 (5th Cir. 1999). Summary judgment is appropriate where the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). McGinnis is entitled to habeas relief from his state conviction and sentence only if the Texas court's adjudication of his claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

III

McGinnis argues that the state trial court's decision to excuse three African-Americans from the venire was unconstitutional. According to McGinnis, these excusals violated the "fair cross section" requirement of the Sixth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Due Process Clause of the Fourteenth Amendment.

Of the 102 individuals who reported for jury duty in McGinnis's case, three were African-American. Texas law provides that after the venire has been sworn, the trial court shall "hear and determine excuses offered for not serving as a juror, and if the court deems the excuse sufficient, the

-2-

court shall discharge the juror or postpone the juror's service." TEX. CRIM. P. CODE, art. 35.03. Over thirty venirepersons asked to be excused pursuant to Article 35.03, including the three African-Americans. The first African-American juror sought an excuse because she had scheduled an out-of-town vacation. The second African-American juror sought an excuse because she had high blood pressure and vision problems, and because she worked to support herself. The third African-American juror sought an excuse because she suffered seizures and was on medication. The trial court accepted these excuses, over McGinnis's objections. In total, the court excused twenty-two potential jurors, including the three African-Americans. As a result, the pool of jurors presented to the attorneys for peremptory challenges contained no African-Americans.

A

McGinnis first argues that the state court's excusal of all three African-American venirepersons violated the Sixth Amendment.[1] The Sixth Amendment requires that juries in criminal trials must be "drawn from a fair cross section of the community." *Taylor v. Louisiana*, 419 U.S. 522, 527, 95 S. Ct. 692, 696, 42 L. Ed. 2d 690 (1975). Accordingly, "venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Duren v. Missouri*, 439 U.S. 357, 363-64, 99 S. Ct. 664, 668, 58 L. Ed. 2d 579 (1979). To establish a *prima facie* Sixth Amendment violation, McGinnis must show,

> (1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

*Id.* at 364, 99 S. Ct. at 668.[2]

---

[1] McGinnis bases his Sixth Amendment argument exclusively on the state court's excusal of the three black venirepersons. McGinnis does not argue that presence of only three African-Americans in the initial venire violated the Sixth Amendment.

[2] We have found no cases that apply the *Duren* test to an excusal provision such as article 35.03. However, we assume for the purposes of addressing McGinnis's argument that the *Duren* test applies.

As to the first requirement of the *prima facie* case, African-Americans are unquestionably a "distinctive group in the community" for Sixth Amendment purposes. *See United States v. Royal*, 174 F.3d 1, 6 (1st Cir. 1999); *United States v. Rioux*, 97 F.3d 648, 654 (2d Cir. 1996). As to the second requirement, McGinnis presents statistics on the proportion of African-Americans on jury venires relative to the whole community.[3] However, we need not decide whether these statistics are sufficient to satisfy the second requirement, because McGinnis's evidence plainly fails to satisfy the third requirement. McGinnis fails to show that the state court's excusal of the three African-Americans from his jury venire resulted from the "systematic exclusion" of African-Americans. McGinnis argues that the excusal of the three African-American venirepersons was systematic "because it resulted from the operation of Texas procedures by which juries are qualified, excused, or exempted from service" and because "article 35.03 creates a systematic danger of the underrepresentation of distinctive groups on criminal jury venires." These contentions fail to satisfy the third requirement of the *prima facie* case.

According to the Supreme Court, a process systematically excludes a group if the underrepresentation of that group is "inherent in the particular jury-selection process utilized." *Duren*, 439 U.S. at 366, 99 S. Ct. at 669; *Timmel v. Phillips*, 799 F.2d 1083, 1086-87 (5th Cir. 1986). McGinnis presents insufficient evidence that underrepresentation of African-Americans is "inherent" in the excusal process under article 35.03. The only evidence McGinnis presents concerning the effect of article 35.03 involves his own venire.[4] McGinnis asserts that the state court excused only sixteen out of the thirty non-African-American venirepersons who sought excusal under

---

[3] McGinnis marshals jury composition statistics from nine Montgomery County capital cases, including his own. In these cases, a total of 781 venirepersons were presented to the attorneys for peremptory challenges. Eighteen of these venirepersons were African-American—2.3% of the total. McGinnis points out that according to 1990 census data, the population of Montgomery County is 3.8% African-American.

[4] McGinnis's statistics from eight other Montgomery County capital venires, *see supra* n.3, are legally insufficient to prove that underrepresentation of African-Americans is inherent in the article 35.03 excusal process. These statistics contain no information on the number of venirepersons excused pursuant to article 35.03.

article 35.03, whereas the court excused all three African-American venirepersons.[5]  Based on these figures, he contends that the trial court excused 100% of the African-American venirepersons seeking excusal, but excused only 53.3% of the non-African-American venirepersons seeking excusal.

These statistics alone are insufficient to raise a genuine issue that the Texas excusal provision inherently causes African-Americans to be underrepresented.  We have held that "[o]ne incidence of a jury venire being disproportionate is not evidence of a 'systematic' exclusion." *Timmel*, 799 F.2d at 1087.  Therefore, "a one-time example of underrepresentation of a distinctive group wholly fails to meet the systematic exclusion element in *Duren*." *Id.*; *see also Untied States v. Defries*, 129 F.3d 1293, 1301 (D.C. Cir. 1997); *Singleton v. Lockhart*, 871 F.2d 1395, 1399 (8th Cir. 1989).[6]

---

[5] These figures, which indicate that the state court excused a total of nineteen venirepersons under article 35.03, seem inconsistent with a statement made earlier in McGinnis's brief that the court excused a total of twenty-two venirepersons.  For the sake of argument, however, we will examine the statistics as he presents them in the context of his Sixth Amendment claim.

[6] We have found no cases that examine the appropriate use of statistical analysis in the context of a facially neutral juror excusal provision, under which jurors voluntarily decide whether to seek an excuse from jury service.  Because McGinnis's statistics are legally inadequate under *Timmel*, we need not address this issue today.  We note, however, that the mode of analysis endorsed by the Supreme Court to examine the racial composition of grand juries demonstrates that the excusal pattern in McGinnis's case is not, as a statistical matter, suspicious.  In *Castaneda v. Partida*, 430 U.S. 482, 496 n.17, 97 S. Ct. 1272, 1282 n.17, 51 L. Ed. 2d 498 (1977), the Supreme Court analyzed grand jury statistics using standard deviations.  It held that the impartiality of a selection process becomes "suspect" only "if the difference between the expected value and the observed number is greater than two or three standard deviations." *Id.*; *see also Boykins v. Maggio*, 715 F.2d 995, 996 (5th Cir. 1983) (rejecting criminal defendant's claim that the jury and venire selection process systematically excluded blacks where the observed jury composition was two standard deviations from the expected value).

According to McGinnis, thirty-three venirepersons sought excusal—three African-Americans and thirty non-African-Americans.  The judge granted nineteen excusals—three to African-Americans and sixteen to non-African-Americans.  To calculate the standard deviation, we assume that the nineteen excuses were granted at random. *See Castaneda*, 430 U.S. at 496 n.17, 97 S. Ct. at 1281 n.17; *Boykins*, 715 F.2d at 995 (calculating the standard deviation by "[e]mploying the statistical analysis approved by the Supreme Court in *Castaneda*").  The standard deviation is calculated by taking the square root of the following product: the total number of excuses granted, times the percentage of African-Americans in the pool of excuse-seekers, times the percentage of non-African-Americans in the pool of excuse-seekers. *See Castaneda*, 430 U.S. at 496 n.17, 97 S. Ct. at 1281 n.17; *Boykin v. Georgia-Pacific Corp.*, 706 F.2d 1384, 1391 n.3 (5th Cir. 1983).  Here, the judge granted nineteen excusals from a pool that was 9.1% African-American and 90.9% non-African-American.  These figures yield a standard deviation of 1.25.

Assuming a random distribution, we would expect 1.73 African-Americans to be excused (9.1% times 19). *See Boykins*, 715 F.2d at 996 (calculating the expected value).  Thus, the observed number of African-Americans excused (3), exceeds the expected number by 1.27 (3 minus 1.73).  To

-5-

McGinnis fails to present evidence sufficient to demonstrate that the excusal of three African-American venirepersons violated clearly established Sixth Amendment law. Accordingly, the district court did not err in granting summary judgment on McGinnis's Sixth Amendment claim.

B

McGinnis also contends that the excusal of three African-American venirepersons violated the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause protects a criminal defendant against "purposeful racial discrimination" in the selection of his venire. *Batson v. Kentucky*, 476 U.S. 79, 86, 106 S. Ct. 1712, 1717, 90 L. Ed. 2d 69 (1986). "As in any equal protection case, the burden is, of course, on the [criminal] defendant who alleges discriminatory selection . . . to prove the existence of purposeful discrimination." *Id.* at 93, 106 S. Ct. at 1721 (quotation marks omitted).

Although we have found no precedent involving an Equal Protection challenge to an excusal provision such as the one at issue in this case, we are guided by Supreme Court precedent in other areas of jury and venire selection. *See id.* at 96-97, 106 S. Ct. at 1723 (peremptory challenges); *Castaneda v. Partida*, 430 U.S. 482, 495, 97 S. Ct. 1272, 1280, 51 L. Ed. 2d 498 (1977) (grand jury selection). To make out a *prima facie* case of purposeful discrimination, the criminal defendant must show that the group excluded from jury participation is "a cognizable racial group," and that the "relevant circumstances raise an inference" of purposeful discrimination. *Batson*, 476 U.S. at 96, 106 S. Ct. at 1723. "In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances." *Id.* at 96-97, 106 S. Ct. 1723. A criminal defendant may make out a *prima facie* case of discriminatory purpose by showing "substantial underrepresentation" of a cognizable group. *Castaneda*, 430 U.S. at 495, 97 S. Ct. at 1280. In addition, "a selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing." *Id.* at 494, 97 S. Ct. at 1280.

express this disparity (1.27) in terms of standard deviations, we simply divide it by the standard deviation for the sample (1.25). *See Boykin*, 706 F.2d at 1391 n.3. The disparity is 1.02 standard deviations, well below the two or three standard deviations required under *Castaneda*.

-6-

McGinnis has failed to raise an inference that the trial judge excused the three African-American venirepersons because of purposeful racial discrimination. As discussed above, the statistical evidence presented by McGinnis is insufficient to demonstrate that the judge disproportionately excluded African-Americans. Furthermore, the excusal provision is facially neutral as to race, and McGinnis presents no evidence that the judge treated the African-American venirepersons differently from the non-African-American venirepersons. For example, McGinnis cites no evidence that the judge accepted weaker excuses from African-Americans than he did from non-African-Americans. In short, nothing in the record suggests that racial bias motivated the excusal of the three venirepersons.

Furthermore, the state habeas court found that the state trial court excused the three African-American venirepersons based on race-neutral criteria. Such factual findings by a state court "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). A petitioner contesting such a finding "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* McGinnis's evidence of purposeful racial discrimination is not clear and convincing. Accordingly, McGinnis fails to raise a genuine issue of fact that the trial court's actions violated clearly established Equal Protection law. The district court did not err in granting summary judgment as to that claim.

C

McGinnis also argues that the trial court's excusal of three African-Americans from the venire violated the Due Process Clause of the Fourteenth Amendment. He cites *Peters v. Kiff*, 407 U.S. 493, 92 S. Ct. 2163, 33 L. Ed. 2d 83 (1972), in which the Supreme Court reversed the denial of a writ of habeas corpus, because the petitioner alleged that the jury-selection procedures systematically excluded African-Americans. Three justices reasoned that such systematic exclusion violated the Due Process Clause. *See id.* at 501, 92 S. Ct. at 2168 (opinion of Marshall, J.); *see also United States v. Cronn*, 717 F.2d 164, 167 (5th Cir. 1983) (reading Justice Marshall's opinion as resting on due process grounds).

In *Peters*, Justice Marshall addressed solely "whether a State may subject a defendant to

indictment and trial by grand and petit juries that are plainly illegal in their composition." *Peters*, 407 U.S. at 501, 92 S. Ct. at 2168. To Justice Marshall, it was clear that the systematic exclusion of African-Americans alleged in *Peters* violated the Equal Protection Clause and the Sixth Amendment. *See id.* at 498-500, 92 S. Ct. at 2166-67. The only issue was whether the criminal defendant, who was white, had standing to challenge the exclusion of African-Americans from the grand and petit juries. *See id.* at 500 n.10, 92 S. Ct. at 2167 n.10. Justice Marshall concluded:

> [W]e hold that, whatever his race, a criminal defendant has standing to challenge the system used to select his grand or petit jury, on the ground that it arbitrarily excludes from service the members of any race, and thereby denies him due process of law. This certainly is true in this case, where the claim is that [African-Americans] were systematically excluded from jury service.

*Id.* at 504, 92 S. Ct. at 2169.

Thus Justice Marshall's *Peters* opinion allows a criminal defendant to challenge the racial composition of his grand or petit jury under the Due Process Clause, only when the arbitrary or systematic exclusion of a particular racial group renders the jury "plainly illegal in [its] composition." *Id.* at 501, 92 S. Ct. at 2168. In *Peters*, Justice Marshall accepted as given that the facts alleged by the petitioner violated the Equal Protection Clause and the Sixth Amendment. In the present case, however, McGinnis cannot show that the excusal of the three African-American jurors rendered the jury that convicted him "plainly illegal." As discussed above, McGinnis has not demonstrated the systematic exclusion of a distinctive group, as is required for a Sixth Amendment violation, nor has he demonstrated purposeful racial discrimination, as is required for an Equal Protection violation. Accordingly, McGinnis fails to provide a basis for his Due Process claim. The district court did not err in granting summary judgment as to this claim.

IV

Finally, McGinnis argues that the trial court's decision to exclude certain testimony of an expert psychologist violated the Due Process Clause of the Fourteenth Amendment. At the punishment phase of the trial, McGinnis called Dr. Walter Quijano as an expert witness. Dr. Quijano testified that, in his opinion, McGinnis did not act deliberately in committing the crime, would not

pose a future danger to society, and was capable of remorse. Dr. Quijano sought to support these opinions with testimony about his interview with McGinnis, in which McGinnis gave Dr. Quijano his account of the crime. According to Dr. Quijano, McGinnis stated that he only "wanted to prove to [the victim] that the gun he had was a real gun," and that he only "fired towards the direction of the [victim] to scare her."

The trial court excluded as hearsay any testimony about McGinnis's specific statements during the interview. McGinnis does not dispute that such testimony is hearsay under Texas law. Rather, McGinnis contends that under *Green v. Georgia*, 442 U.S. 95, 99 S. Ct. 2150, 60 L. Ed. 2d 738 (1979), excluding such testimony violates the Due Process Clause. In *Green*, the Supreme Court held:

> Regardless of whether the proffered testimony comes within Georgia's hearsay rule, under the facts of this case its exclusion constituted a violation of the Due Process Clause of the Fourteenth Amendment. The excluded testimony was highly relevant to a critical issue in the punishment phase of the trial, and substantial reasons existed to assume its reliability. . . . In these unique circumstances, the hearsay rule may not be applied mechanistically to defeat the ends of justice.

*Id.* at 97, 99 S. Ct. at 2151-52 (quotation marks and citations omitted). The circumstances in *Green* were unique indeed. At his punishment phase, Green sought to introduce testimony that another individual had admitted to the murder. The witness planned to testify that the other individual confessed to killing the victim, "shooting her twice after ordering [Green] to run an errand." *See id.* at 96, 99 S. Ct. at 2151.

Our court has limited *Green* to its facts. *See Edwards v. Scroggy*, 849 F.2d 204, 212 (5th Cir. 1988). In *Edwards*, we upheld a trial court's decision to exclude from the punishment phase mitigating testimony concerning statements made by the defendant. There, a priest testified about his meeting with the defendant. The court allowed the priest to testify about his opinion of the defendant based on that meeting. *See id.* at 212. The priest testified that the defendant was gentle, soft spoken, and exhibited no hostility. *See id.* However, the trial court excluded as hearsay any testimony about direct statements made by the defendant during that meeting. *See id.* We upheld the trial court's evidentiary ruling, writing that "unlike *Green*, the State of Mississippi's application

of its hearsay rule to exclude the evidence proffered in this case was not unnecessarily limiting, nor did it operate to render [the] trial fundamentally unfair." *Id.*

Likewise, excluding Dr. Quijano's hearsay testimony about McGinnis's direct statements was not unnecessarily limiting. Dr. Quijano was permitted to testify about his opinion of McGinnis's state of mind during and after the crime. Excluding McGinnis's statements to Dr. Quijano did not render McGinnis's trial fundamentally unfair. Accordingly, we find that the district court did not err in granting summary judgment as to McGinnis's Due Process claim under *Green*. The state court's exclusion of hearsay evidence did not violate clearly established federal law.

V

For these reasons, we AFFIRM the district court's denial of habeas corpus relief under 28 U.S.C. § 2254.