Thomas A. BAREFOOT,
Petitioner-Appellant,

v.

W.J. ESTELLE, Jr., Director, Texas
Department of Corrections,
Respondent-Appellee.

No. 82–1680.

United States Court of Appeals,
Fifth Circuit.

Jan. 20, 1983.

Will Gray, Carolyn Garcia, Houston, Tex., for petitioner-appellant.

Douglas M. Becker, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before REAVLEY, RANDALL and JOLLY, Circuit Judges.

PER CURIAM:

Thomas A. Barefoot was convicted in November, 1978 of murdering a Harker Heights police officer in Bell County, Texas on August 7, 1978.[1] The Court of Criminal Appeals of Texas affirmed the conviction on March 12, 1980 and denied rehearing on April 30, 1980. *Barefoot v. State*, 596

1. The jury answered affirmatively to these questions of the Tex.Code of Crim.Pro.Ann. art. 37.071:

(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.

S.W.2d 875 (Tex.Crim.App.1980). Barefoot was sentenced to die on September 17, 1980. The United States Supreme Court stayed execution and then dissolved the stay when certiorari was denied on June 29, 1981, 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996. Barefoot was again sentenced to die on October 13, 1981. The state district court denied habeas, as did the Court of Criminal Appeals. The federal district court then stayed the execution on October 9, 1981. After an evidentiary hearing, that federal court denied habeas corpus on November 11, 1982. The State of Texas moved to vacate the stay of execution and the court did vacate it on December 8, 1982. Because the district court granted certificate of probable cause, the denial of habeas is now on appeal in this court. Barefoot has now been resentenced and is to die before sunrise on January 25, 1983. Barefoot moves to stay execution of the sentence pending appeal.

Following the 1978 trial and conviction in Bell County, the Bell County District Court has reviewed the conviction on collateral attack, the Texas Court of Criminal Appeals has reviewed the conviction four times (once on direct appeal and three times on collateral attack), the Supreme Court of the United States has reviewed it on application for certiorari, and the federal district court has held an evidentiary hearing and—after 14 months—upheld the conviction.

### 1. The Nature of Our Decision

This panel has studied the briefs and record filed with us and has conducted a hearing on January 19, 1983, at which the petitioner's attorney was allowed unlimited time to discuss any matter germane to the decision before us.

That decision is a limited one. This court may interfere with the action of the State of Texas only upon a showing that the Constitution of the United States has been violated. Upon the question of whether to stay execution until the appeal

has been processed, we consider the likelihood of success of that appeal. *Ruiz v. Estelle,* 650 F.2d 555 (5th Cir.1981). There should be a substantial case on the merits of any serious legal question involved in the appeal to warrant staying the decision below. *Ruiz v. Estelle,* 666 F.2d 854, 857 (5th Cir.1982). If after all these years of study, no constitutional imperfections of substance can be found, it becomes the duty of this court to deny the stay and refuse to interfere with the authorities of the State of Texas as they follow the laws of that state.

### 2. The Trial Court's Certificate of Probable Cause

We note that the district court's issuance of a certificate of probable cause bears upon our consideration here. In this circuit, "We have equated probable cause ... to a 'substantial showing of the denial of [a] federal right.'" *Stewart v. Beto,* 454 F.2d 268, 270 n. 2 (5th Cir.1971), *quoting Harris v. Ellis,* 204 F.2d 685, 686 (5th Cir. 1953). And if the denial of a certificate by a district judge should be given "weighty consideration" by a circuit judge, *Nowakowski v. Maroney,* 386 U.S. 542, 543, 87 S.Ct. 1197, 1198, 18 L.Ed.2d 282 (1967), then the granting of a certificate should be entitled to similar treatment. However, this does not relieve us of our duty under Fed.R. App.P. 8 to decide the issue for ourselves. To give too much weight to the district court's issuance of the certificate would be to give it preclusive effect on our determination of the stay issue. Rule 8 clearly contemplates that it is the appellate court's responsibility to decide the merits of the stay.[2]

This court had the same question before it last month in *Brooks v. Estelle,* 702 F.2d 84. The stay was denied by this court and also by the Supreme Court. —— U.S. ——, 103 S.Ct. 1490, 74 L.Ed.2d —— (1982). Justices Brennan, Marshall and

---

**2.** This preclusive effect is also inconsistent with the district court's denial of the stay in the first instance. The district court must have thought that appellant did not meet the requirements of

a stay. Yet, if we gave the C.P.C. preclusive effect, then we would in effect be saying that its issuance means that the district court thought petitioner is entitled to a stay.

Stevens dissented from the denial of the stay. They argued that once a certificate of probable cause has been issued, the appellant "must then be afforded an opportunity to address the merits." *Garrison v. Patterson,* 391 U.S. 464, 466, 88 S.Ct. 1687, 1688, 20 L.Ed.2d 744 (1968). *See also Nowakowski v. Maroney,* 386 U.S. 542, 543, 87 S.Ct. 1197, 1198, 18 L.Ed.2d 282 (1967). ("When a district court grants a certificate of probable cause the court of appeals must . . . proceed to a disposition of the appeal in accord with its ordinary procedure.")

The simple response to this argument is that since six members of the Court denied the petition for stay, this argument must have been rejected. We respectfully suggest, however, that *Nowakowski* and *Garrison* are inapposite here. In *Garrison,* the court of appeals upon motion for a certificate of probable cause, simultaneously granted the certificate and, without argument on the merits or explanation of its reasons, affirmed the district court. *Nowakowski* dealt with a denial of leave to proceed *in forma pauperis* once the district court had granted a certificate of probable cause. The Court's concern was the attempt by the appellate court to circumvent the district court's power to grant a habeas petitioner an appeal.

Neither of these cases addressed a situation in which the party had an opportunity to brief and argue the merits of the underlying issues, nor do they suggest that the stay procedure of Rule 8 is somehow abrogated by the granting of a certificate of probable cause. We think that this case is controlled by *Carafas v. LaVallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), more than *Garrison* and *Nowakowski.* In *Carafas,* the Court, as in *Nowakowski,* reversed the Second Circuit's denial of leave to proceed *in forma pauperis.* The Court discussed *Nowakowski* and its implications. The Court stated:

> Nothing in the order entered by the Court of Appeals, however, indicates that the appeal was duly considered on its merits as *Nowakowski* requires in cases where a certificate of probable cause has

been granted. Although *Nowakowski* does not necessarily require that the Court of Appeals give the parties full opportunity to submit briefs and argument in an appeal which, despite the issuance of the certificate of probable cause, is frivolous, enough must appear to demonstrate the basis for the court's summary action.

*Id.* at 242, 88 S.Ct. at 1562. Our actions here fall under this language. Petitioner's motion is directed solely to the merits. The parties have been also afforded an unlimited opportunity to make their contentions upon the underlying merits by briefs and oral argument. This opinion demonstrates the reasons for our decision. We think, therefore, that the arguments put forth by the dissenters in *Brooks* should not prevent us from denying this stay if there is an indisputable absence of merit to the petitioner's complaint.

### 3. Merits of Appeal: Psychiatric Testimony on Dangerousness

■ The sole issue that petitioner raises on appeal concerns testimony at the sentencing stage by two psychiatric experts regarding appellant's future dangerousness. Neither of these witnesses had interviewed petitioner, but testified on the basis of hypothetical questions. Petitioner argues that the admission of this testimony amounts to constitutional error.

The evidence before the federal district court supported its conclusion that the accuracy of psychiatric predictions of future dangerousness dramatically rises where there has been a pattern of repetitive assaultive and violent conduct. The majority of psychiatric experts accept that view. All of the experts have testified that the conduct of the petitioner, to which the assumed facts adhered in the hypothetical question put to the psychiatrists at the original trial, was the conduct of a severe sociopath. They disagreed over the degree of certainty with which future conduct could be predicted, but this only shows a difference of opinion among professionals—no rarity to the courts or to citizens who serve as jurors. We find no error of law or violation of the

constitution in the admission into evidence of those opinions, the proper predicate having been laid.

Petitioner relies on *Green v. Georgia,* 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979), and *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), for the proposition that the due process clause of the Fourteenth Amendment and the cruel and unusual punishment clause of the Eighth Amendment set limits upon the types of evidence that may be presented at a sentencing hearing. He then argues that the doctor's testimony is inherently unreliable. He asserts that the inaccuracy in predicting future dangerousness, particularly when no interview has been conducted, requires that the testimony be excluded. He also argues that since the hypotheticals did not include the mitigating evidence, this increases the inaccuracy of the testimony and permits the jury to avoid consideration of the mitigating evidence by simply relying on the doctors' testimony that the accused was a sociopath who would commit future acts of violence.

In *Gardner,* the Court dealt with a death sentence in which the trial judge rejected the jury's recommendation of a life sentence on the basis of a confidential pre-sentence investigation report which was not disclosed to the accused. The opinions of the Court reflect a concern not for a specific evidentiary rule, but for the nature of the adversary system and the need for the accused and his counsel to be able to respond to this evidence.

In *Green,* the state court excluded evidence that the accused's codefendant had actually killed the victim. This evidence consisted of a hearsay statement by the codefendant to a friend. The Court reversed, stating:

> Regardless of whether the proffered testimony comes within Georgia's hearsay rule, *under the facts of this case* its exclusion constituted a violation of the Due Process Clause of the Fourteenth Amendment. The excluded testimony was highly relevant to a critical issue, in the punishment phase of the trial ... (emphasis added)

442 U.S. at 97, 99 S.Ct. at 2151. We think that *Green* is limited to its facts, and certainly did not federalize the law of evidence. It does, however, indicate that certain egregious evidentiary errors may be redressed by the due process clause.

█ We think, however, that the Supreme Court has, by implication at least, approved of psychiatric testimony in cases such as these. In *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), the Supreme Court rejected the argument that requiring the jury to predict future behavior is so vague and uncertain as to be meaningless. While the Court did not deal specifically with what types of evidence the jury may hear, the Court stated that a jury is equipped to make such a determination. The Court stated: "What is essential is that the jury have *all possible relevant information* about the individual defendant. *Id.* at 276. ..." Psychiatric testimony would clearly appear to be relevant to the jury's determination. The fact that such testimony may not always be totally accurate does not affect its relevance to the issue.

Further indication of the approval of psychiatric testimony is contained in *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). The Court dealt with whether the state could use psychiatric testimony at the sentencing stage when the testimony was based on an interview with the defendant and when (1) defendant's counsel was not notified and (2) the defendant was not warned of his right to remain silent. The Court held that this did violate the defendant's rights. The Court, however, went on to discuss the effect of its holding on the state's ability to prove dangerousness. The Court stated:

> [U]nder the Texas capital sentencing procedure, the inquiry necessary for the jury's resolution of the future dangerousness issue is in no sense confined to the province of psychiatric experts....

451 U.S. at 472, 101 S.Ct. at 1878. The Court went on, saying

> While in no sense disapproving the use of psychiatric testimony bearing on the

issue of future dangerousness, the holding in *Jurek* was guided by recognition that the inquiry mandated by Texas law does not require resort to medical experts.

*Id.* These statements indicate that expert testimony meets constitutional requirements for admissibility.

Petitioner argues that the Court was addressing the facts of *Smith,* where the psychiatrist had interviewed the defendant. But there is no indication in *Smith* that the discussion regarding psychiatric testimony was limited to testimony based on personal interviews. More importantly, we think to reject such testimony would be inconsistent with *Smith* and *Jurek.* In *Smith* the Court held that the state could not compel the defendant to submit to a psychiatric interview. Thus, were we to hold that a psychiatrist (or other mental health professional) could not testify on the basis of hypotheticals or an examination of the defendant's record, we would be giving the defendant the right to prevent any and all psychiatric testimony on the issue of dangerousness except psychiatric testimony in his own favor. We think this is inconsistent with the aim approved in *Jurek* that "the jury have before it all relevant information." In addition, we note that if testimony by a mental health professional, trained to detect mental illness and personality types, is inherently unreliable on the issue of future dangerousness, then would not testimony and a decision by untutored lay persons on this issue be even more unreliable? The Supreme Court thinks otherwise as was shown in *Jurek* and *Smith* in holding that the jury could decide the issue and "the inquiry mandated by Texas law does not require resort to medical experts." 451 U.S. at 472, 101 S.Ct. at 1878.

### 4. *Jurisdiction of State Court to Resentence*

■ While the present appeal to this court was pending, the state district court set petitioner's execution date. Petitioner argued to the state court, the Court of Criminal Appeals and now before this court, that while this appeal is pending, the state

court has no jurisdiction to resentence. Alternatively, he argues that if the state courts do have jurisdiction, then he is being denied equal protection of the laws because the Texas courts are closed to him.

These arguments have no merit. The first argument is actually a state law issue which we do not have the power to address in a habeas proceeding. Petitioner's second argument is based on *Ex Parte Powers,* 487 S.W.2d 101 (Tex.Crim.App.1972), *Ex Parte Green,* 548 S.W.2d 914 (Tex.Crim.App.1977), and *Ex Parte McNeil,* 588 S.W.2d 592 (Tex. Crim.App.1979) (en banc). These cases stand for the proposition that

A petitioner must decide which forum he will proceed in, because this Court will not, and a trial court in this State should not, consider a petitioner's application so long as the federal courts retain jurisdiction of the same matter.

*Green,* 548 S.W.2d at 916. We recently discussed this rule in depth, describing it as a rule of habeas abstention based on comity. *Carter v. Estelle,* 677 F.2d 427 (5th Cir. 1982). We do not see how these cases have any application to this case. This rule is one of judicial efficiency which merely prevents the petitioner from litigating the same habeas issues in two forums at the same time. Setting an execution date is clearly not a habeas suit. It is a collateral matter that is not part of the habeas suit. Such a rule would allow petitioner to suspend his sentencing whatever the lack of merit and entitlement to a stay. We therefore reject this argument.

### 5. *Newly Discovered Evidence: Mary Richards*

■ Petitioner foretells grounds for another try at habeas relief because of "newly discovered evidence." Petitioner's attorney interrogated Mary Richards under oath a few weeks ago, without the presence of a representative of the state, and her answers are said to conflict with her testimony for the state at Barefoot's trial and to raise questions of prosecutorial misconduct. We have before us the recent statement of Richards as well as her trial testimony.

Richards lived in the area where the killing occurred. She testified at the trial that she heard two shots that night and, when she looked out her window, she saw a man run by who resembled Barefoot. She now says that it could not have been Barefoot, because the hair and height and build of the two men differed. She says that she has always told everyone who interrogated her, including the investigator who worked for the attorneys defending Barefoot, and everybody she knows, about the true appearance of the man she saw. She explains her testimony at trial on the grounds that it was Barefoot's eye area that resembled the man she had seen and, further, that her testimony was false because an assistant district attorney and his investigator frightened her by telling her Barefoot intended to kill everyone in the office where she worked and that she should just answer the questions "yes" or "no."

It is difficult to accept this current statement of Richards. No rational prosecutor would have called her as a witness if she had told him what she now says she did. Her testimony was not important, to begin with. Her testimony of hearing two shots raised an inconsistency, because the other evidence, including that of an eyewitness to the shooting, was that only one shot was fired. With the strong identification of Barefoot by the other witnesses, to place Mary Richards on the stand if she thought she had seen a different man, would have only contributed another inconsistency. No attorney would have thought she could survive non-leading direct testimony and the cross-examination with only "yes" or "no." If she had told "everybody" and the investigator for the defense of her description of the man she saw, as she now says she did, that would have been played to the hilt by the defense.

Nevertheless, the testimony of Mary Richards, one way or the other, cannot and could not affect the determination of Barefoot's guilt. His presence on the scene was clearly established, as was his guilt. He admitted (actually, boasted of) his guilt to his friends. The gun which fired the fatal shot was in his pocket when he was arrested. He had told others in advance that he planned to kill a Harker Heights policeman and that he was to commit a robbery after creating a diversion by setting fire to a building. A roommate testified that he dropped Barefoot off near the Silver Spur, a nightclub, at 5:00 a.m. A Fort Hood soldier saw a man, whom he identified at trial as Barefoot, standing in the parking lot of the Silver Spur watching the building burn. After reporting the fire, the soldier saw Barefoot again near Amy Lane. He told the officer this, and the officer drove his patrol car toward Amy Lane. Another soldier saw that officer get out of his car at the intersection of Amy Lane and Valley Road. A man wearing a white T-shirt and blue jeans, as Barefoot was dressed, stepped out of the bushes, walked to the officer and shot him in the head at point-blank range, and fled down Valley Road. (Mary Richards lived on Valley Road.)

Even if we were to assume for present purposes (and we would do so for no other purpose), that the prosecutor deliberately frightened Mary Richards to obtain her testimony and then sat by without disclosing that her testimony conflicted with her prior description, a reversal of the conviction would not be justified for the reason that the omitted evidence could not create a reasonable doubt of Barefoot's guilt, and the alleged prosecutorial conduct could not have had an effect on the trial. *See Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982); *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

This point has been raised and rejected by collateral attack in the Texas courts. There would be no justification for delay in order to have a further presentation in the federal courts.

### 6. *Conclusion*

This court has had the benefit of the full trial court record except for a few exhibits unimportant to our considerations. We have read the arguments and materials filed by the parties. The petitioner is represented here, as he has been throughout

the habeas corpus proceedings in state and federal courts, by a competent attorney experienced in this area of the law. We have heard full arguments in open court. Finding no patent substantial merit, or semblance thereof, to petitioner's constitutional objections, we must conclude and order that the motion for stay should be DENIED.