**IN THE SUPREME COURT OF TENNESSEE**
**AT KNOXVILLE**

**FILED**

**January 24, 2000**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

STATE OF TENNESSEE,                    )
                                       )
    Appellee,                          )
                                       )
v.                                     )   NO. E1995-00017-SC-R11-CD
                                       )
HOWARD BROWN,                          )
                                       )
    Appellant.                         )


## DISSENTING OPINION


I agree with the majority's conclusion that the rape shield law does not prohibit evidence of the victim's prior consensual sexual activity when the State has introduced evidence of the injury to the victim's hymen. The defendant then could have introduced admissible, competent, and reliable evidence to show prior sexual activity by simply asking the **victim** whether she had prior sexual contact. The defendant's counsel failed to elicit this information from the victim and attempted to "back door" the information via inadmissible hearsay testimony. I depart from the majority's opinion allowing the introduction of the inadmissible hearsay as substantive evidence in lieu of admissible testimony from the declarant who was present at trial to testify.


I disagree with the majority's conclusion that the United States Supreme Court decisions, Green v. Georgia, 442 U.S. 95 (1979) (Rehnquist, J., dissenting), and Chambers v. Mississippi, 410 U.S. 284 (1973) (Rehnquist, J., dissenting), abrogate a valid and nonarbitrary rule against hearsay evidence and mandate a reversal of this case. The majority's holding potentially abridges other exclusionary rules such as the rape shield rule and places an extremely onerous burden on trial judges.

The majority has misapplied two extremely narrow United States Supreme Court holdings and has created a new constitutional evidentiary principle merely because an attorney failed to follow established evidentiary procedures that were a prerequisite to admission of the desired hearsay testimony. See Montana v. Egelhoff, 518 U.S. 37, 42 (1996) ("Relevant evidence may . . . be excluded on account of a defendant's failure to comply with procedural requirements."); see also Michigan v. Lucas, 500 U.S. 145 (1991) (preclusion of evidence concerning the defendant's past sexual relations with victim was no violation where the defendant failed to comply with procedures). Moreover, the majority applies this new constitutional principle in a manner that relieves criminal defendants from complying with rules of evidence and procedure that are designed to ensure both fairness and admission of reliable evidence in criminal trials.

I would limit the application of both Green and Chambers to the facts of those cases and would apply their holdings to hearsay issues only when the following factors are present: (1) the statement is a declaration against a penal interest; (2) the declarant is unavailable to testify;[1] (3) the statement is a third-party confession to a crime in which the confession is substantially corroborated by direct evidence; (4) the veracity or reliability of the statement is not questionable; and (5) the defendant otherwise would be absolutely precluded from introducing the evidence.[2] These are the determinative factors in Chambers and Green. Moreover, this limitation would be consistent with every jurisdiction having assessed the application of Chambers and Green to hearsay issues; perhaps most importantly the limitation is consistent with Egelhoff, 518 U.S. at 42. The hearsay evidence in the case now before us fails to meet *any* of the above criteria. Accordingly, I would hold that our valid hearsay rule designed

---

[1]In Chambers, the trial judge's application of the voucher rule effectively precluded the declarant from testifying that he had previously confessed to the killing for which Chambers was being tried. Accordingly, the declarant in Chambers was unavailable as a witness to provide direct evidence of his previous confessions. See United States v. MacDonald, 688 F.2d 224, 232 fn. 13 (4th Cir. 1982) ("One could argue that Chambers applies only where the declarant is available" but unavailable to testify.).

[2]The United States Supreme Court placed particular emphasis on the fifth factor, that the defendant was otherwise precluded from introducing the evidence. While the case now before us fails to meet all five elements, it is important to note that our rules of evidence would have allowed the defendant to place this information before a jury had counsel followed proper evidentiary procedure.

2

to exclude testimony whose trustworthiness is inherently suspect should not be abridged by a due process right to present testimony in this case.

## RIGHT TO PRESENT EVIDENCE

The majority erroneously concludes that "[e]xcluding the proffered evidence essentially deprived Brown of an opportunity to present to the jury an alternative explanation for the complainant's hymenal injury." I disagree. The victim herself was present and available to testify. When the State made an issue of the hymenal tear, the defendant could have simply asked the victim whether she had previously engaged in sexual activity. The failure to pursue this line of questioning is essentially what deprived Brown of an opportunity to present an alternative theory explaining the hymenal tear.

In response to counsel's failure, the majority fashions a rule which in effect permits a party who fails to comport with established evidentiary procedures to present inadmissible forms of the desired evidence. Moreover, the majority allows hearsay to be considered as substantive evidence even though the hearsay statement would have been admissible only for impeachment purposes had the defendant complied with the rules of evidence. This elevation of the statement to substantive evidence due merely to a failure to comply with evidentiary procedures is illogical. The troubling aspect of this elevation is that the proffered evidence was subject to multiple layers of reliability and evidentiary problems: (1) the victim may have been lying or boasting when she made the statement to third parties; and (2) it is entirely possible that the victim never made this statement to the third-party witnesses. Accordingly, such evidence should not be admissible as substantive evidence.

The right to present relevant testimony is not without limitation. Michigan v. Lucas, 500 U.S. 145, 149 (1991); Rock v. Arkansas, 483 U.S. 44, 54 (1987); see also United States v. Scheffer, 523 U.S. 303 (1998). The right to present evidence may in appropriate cases bow to accommodate other legitimate interests in the criminal trial process. Lucas, 500 U.S. at 149. Stated simply, "[t]he accused does not have an unfettered right to offer [evidence] that is

3

incompetent, privileged, or otherwise inadmissible under standard rules of evidence." <u>Montana v. Egelhoff</u>, 518 U.S. 37, 42 (1996).

States are afforded "broad latitude under the Constitution to establish rules excluding evidence from criminal trials." <u>Scheffer</u>, 523 U.S. at 306. States shall evaluate whether the interests served by evidentiary rules justify the limitations imposed on the defendant's constitutional right to testify. <u>Rock</u>, 483 U.S. at 55. Rules of exclusion "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate' to the purposes they are designed to serve." <u>Scheffer</u>, 523 U.S. at 306, <u>citing</u> <u>Rock</u>, 483 U.S. at 55.

The rule against hearsay is predicated on the notion that untrustworthy evidence should not be presented to a trier of fact. <u>See</u> <u>Egelhoff</u>, 518 U.S. at 42 ("Hearsay rules . . . prohibit the introduction of testimony which, though unquestionably relevant, is deemed insufficiently reliable."). Out-of-court statements are traditionally excluded because those statements "lack the conventional indicia of reliability: they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury." <u>Chambers</u>, 410 U.S. at 299. Accordingly, the Constitution should not be interpreted in a manner that relieves a defendant from compliance with rules of evidence and procedure that are designed to ensure both fairness and reliability. <u>Id.</u> at 302.

## CASES CITED BY MAJORITY

The majority cites the following cases for the proposition that the "constitutional right to present a defense has been held to 'trump' a number of other state and federal rules of procedure and evidence including the prohibition of the state rape shield statutes": <u>State v. Jalo</u>, 557 P.2d 1359 (Or. Ct. App. 1976); <u>Commonwealth v. Black</u>, 487 A.2d 396 (Pa. Super. Ct. 1985); <u>Tague v. Richardson</u>, 3 F.3d 1133 (7th Cir. 1993); <u>United States v. Begay</u>, 937 F.2d 515

4

(10th Cir. 1991). These cases are readily distinguishable from the case now before us and did not involve issues concerning hearsay evidence.

The cited cases hold that evidence generally precluded by a rape shield law may be admissible if the State either opens the door for admission of the evidence or if the evidence is offered for purposes other than to show the victim's moral defect or consent. See generally Jalo, 557 P.2d at 1361 (motive); Black, 487 A.2d at 400 (bias or motive). The State may open the door for evidence concerning a victim's prior sexual behavior by presenting expert evidence of an injured hymen or other evidence indicating that a victim has been sexually penetrated. See generally Tague v. Richardson, 3 F.3d 1133 (7th Cir. 1993); United States v. Begay, 937 F.2d 515 (10th Cir. 1991). The key distinction between these holdings and the case now before us is that the proffered evidence of prior sexual contact in the above cases was precluded only by the rape shield laws but was *otherwise admissible* under the general rules of evidence.

The majority's conclusion that the defendant was denied a right to present testimony of an alternative theory explaining the hymenal tear may have been correct pursuant to the above cases if, and only if, the defendant was prohibited, once the condition of the hymen was made an issue, from asking the victim in this case on cross-examination whether she had previously had consensual sexual contact. The mere fact that evidence is not precluded by a rape shield law does not automatically entitle the defendant to present the evidence in a rape trial. The evidence must still otherwise be admissible. Accordingly, the above-cited holdings would not allow admission of inadmissible hearsay and are limited to otherwise *admissible* evidence being admitted under narrow exceptions to the rape shield laws.

## UNITED STATES SUPREME COURT DECISIONS

The majority opinion cites two United States Supreme Court decisions, Green v. Georgia, 442 U.S. 95 (1979) (Rehnquist, J., dissenting), and Chambers v. Mississippi, 410 U.S. 284 (1973) (Rehnquist, J., dissenting), for the proposition

5

that "the constitutional right to present a defense has been held to 'trump' the rule against hearsay." Both Green and Chambers, however, merely mandated exceptions to Georgia's and Mississippi's rules against hearsay for declarations made against a penal interest. See Rock v. Arkansas, 483 U.S. 44, 53 (1987) (noting Court in Chambers "invalidated State's hearsay rule . . ."). Both holdings were narrowly tailored and premised on the "unique" circumstances of each case. Green, 442 U.S. at 97; Chambers, 410 U.S. at 1048-49.

The majority cites Green for the proposition that "[r]egardless of whether the proffered testimony comes within Georgia's hearsay rule, under the facts of this case its exclusion constituted a violation of the Due Process Clause of the Fourteenth Amendment." Green, 442 U.S. at 97. Green, however, is readily distinguishable from the case now before us. In Green, the defendant ("Green") and a co-defendant ("Moore") were both indicted for the rape and murder of a victim. Moore was tried separately and sentenced to death. During Moore's trial, the State introduced the testimony of a Thomas Pasby. Pasby testified that Moore had confided to Pasby that Moore had killed the victim. Moore informed Pasby that he shot the victim twice after ordering Green to run an errand.

Green was subsequently convicted by a jury of murder. A second trial was conducted to determine whether Green should be sentenced to death. During the sentencing trial, Green attempted to introduce Pasby's testimony to show that Green was not present when the victim was killed and that Green had not participated in the victim's death. When the case was tried, Georgia recognized an exception to the hearsay rule for declarations against pecuniary interest but not for declarations against penal interest. Accordingly, the trial court held that Pasby's testimony constituted inadmissible hearsay and refused to allow Green to introduce the evidence.

The United States Supreme Court granted certiorari and held that under the facts of Green the exclusion of Pasby's testimony constituted a violation of the Due Process Clause of the Fourteenth Amendment. The basis for the Supreme Court's ruling was that the absence of an exception to the hearsay rule for declarations against penal interest precluded Green from proffering relevant

6

evidence even though "substantial reasons existed to assume its reliability." Id. at 97.

In Green, the Court was particularly troubled by the "unique circumstances" of Green. Id. at 97. Pasby's testimony was admissible in Moore's trial and the State "considered the testimony sufficiently reliable to use it against Moore, and to base [Moore's] sentence of death upon it." Id. Moore's statement to Pasby was a spontaneous confession to a close friend. The evidence corroborating the confession was ample. Id. The confession was against Moore's interest, and there was no reason to believe that Moore had any ulterior motive in making the confession. Under these unique circumstances, the Court held that "the exclusion of Pasby's testimony denied the Petitioner a fair trial on the issue of punishment." Id.

Similar to Green, the United States Supreme Court in Chambers v. Mississippi, 410 U.S. 284 (1973), was confronted with a defendant's inability to introduce evidence that a third person had repeatedly confessed orally to committing the murder with which the defendant was charged. When Chambers was tried, the Mississippi Rules of Evidence did not recognize an exception to the hearsay rule for declarations against penal interest and adhered to the common law "voucher rule."[3] The Supreme Court held that the exclusion of the evidence constituted a violation of the Due Process Clause of the Fourteenth Amendment. As in Green, the Court seemed troubled by Mississippi's absence of an exception to the rule against hearsay which would allow introduction of a declaration against penal interest when the declaration was exculpatory and "bore persuasive assurances of trustworthiness." Id. at 302.

In Chambers, the Court explicitly noted that the third party's confessions "were originally made and subsequently offered at trial under circumstances that provided considerable assurances of their reliability." Id. at 300. The third party confessed to three different individuals. The confessions were made spontaneously and to close acquaintances shortly after the murder occurred.

---

[3]This rule prevents a party from impeaching its own witness; its corollary is that a party calling a witness is bound by anything the witness might say.

7

The confessions were corroborated by substantial independent evidence. The declarant did not stand to benefit from disclosing his role in the murder, and the declarant was present in the courtroom and could have been cross-examined under oath. Id. at 300-01.

The Court briefly noted that a rationale for the rule against hearsay is to exclude untrustworthy testimony. Id. at 298. Where the testimony bears persuasive assurances of trustworthiness and the testimony is exculpatory in nature, the hearsay rule should "not be applied mechanistically to defeat the ends of justice." Id. at 302. Accordingly, Chambers effectively held that stringent application of the rule against hearsay may violate fundamental standards of due process when the rule is applied mechanistically and in a manner precluding introduction of statements against penal interest that are both reliable and "directly affecting the ascertainment of guilt." Id.

The crux of the Chambers and Green decisions is that a defendant has a fundamental right to present *reliable* evidence of a third party's confession to a crime for which the defendant is being tried. Evidence of a spontaneous confession by a third party that is corroborated by direct evidence satisfies a showing of "particularized guarantees of trustworthiness" and is sufficiently reliable to be admissible as an exception to the rule against hearsay. State v. Bunyan, 712 A.2d 1091, 1094 (N.J. 1998). A child's off-hand and perhaps boastful remarks, however, to other children concerning the child's sexual prowess lack the particular guarantees of trustworthiness indicative of statements generally admissible under the exceptions to the hearsay rule.

## LIMITATION OF CHAMBERS AND GREEN

The majority holds that the defendant was denied the opportunity to present a defense pursuant to Chambers because hearsay evidence relating to an element of the State's case was excluded. The majority, however, fails to recognize the limited application of Chambers articulated in subsequent Supreme Court decisions.

8

In <u>Montana v. Egelhoff</u>, 518 U.S. 37 (1996), a plurality of the Court noted the limited application of <u>Chambers</u> by stating:

> the holding of Chambers–if one can be discerned from such a fact-intensive case–is certainly not that a defendant is denied "a fair opportunity to defend against the State's accusations" whenever "critical evidence" favorable to him is excluded, but rather that erroneous evidentiary rulings can, in combination, rise to a level of a due process violation.

<u>Id.</u> at 53. The limitation on <u>Chambers</u> was subsequently confirmed by an eight-Justice majority, excluding Justice Stevens, in <u>United States v. Scheffer</u>, 523 U.S. 303, 118 S. Ct. 1261 (1998). In <u>Scheffer</u>, eight Justices agreed that "<u>Chambers</u> specifically confined its holding to the 'facts and circumstances' presented in that case." 118 S. Ct. at 1268. Both state and federal courts that have been confronted with <u>Chambers</u> have explicitly limited <u>Chambers</u> and <u>Green</u> to the facts of those cases. See <u>Welcome v. Vincent</u>, 549 F.2d 853, 857 (2nd Cir. 1977); <u>Little v. Johnson</u>, 162 F.3d 855 (5th Cir. 1998) ("In <u>Montana v. Egelhoff</u>, the Supreme Court explained, '[T]he holding of Chambers–if one can be discerned from such a fact-intensive case . . .'"); <u>Barefoot v. Estelle</u>, 697 F.2d 593, 597 (5th Cir. 1983) ("We think that <u>Green</u> is limited to its facts . . . ."); <u>Maness v. Wainwright</u>, 512 F.2d 88, 91 (5th Cir. 1975) (recognizing factual limits on <u>Chambers</u> holding); <u>McGinnis v. Johnson</u>, 181 F.3d 686, 693 (5th Cir. 1999); <u>Gacy v. Welborn</u>, 994 F.2d 305, 316 (7th Cir. 1993); <u>United States v. Fowlie</u>, 24 F.3d 1059, 1069 (9th Cir. 1994) (noting that <u>Chambers</u> was based on addressing antiquated rules of evidence that precluded admission of a third party's confession); <u>Jones v. State</u>, 709 So. 2d 512, 524 (Fla. 1998) (noting that <u>Chambers</u> was "limited to its facts due to the peculiarities of Mississippi evidence law which did not recognize a hearsay exception for declarations against penal interest."); <u>Gudinas v. States</u>, 693 So. 2d 953, 965 (Fla. 1997) (limiting <u>Chambers</u> to "its facts due to the peculiarities of Mississippi evidence law which did not recognize a hearsay exception for declarations against penal interest."); <u>State v. Bunyan</u>, 712 A.2d 1091, 1095 (N.J. 1998).

Because it is clear that the application of both <u>Chambers</u> and <u>Green</u> should be limited to the facts of those cases when applied to issues involving

9

hearsay evidence, this Court should have examined the facts of those cases. Both Chambers and Green involved: (1) declarations against a penal interest; (2) hearsay statements in which the declarant was unavailable to testify; (3) third-party confessions to a crime that were substantially corroborated with direct evidence; (4) hearsay statements in which the veracity or reliability of the statement was not questionable; and (5) situations in which the defendant would otherwise absolutely have been precluded from introducing the evidence. I read factor (5) as being the key consideration by the Court in both Chambers and Green. See also Gacy v. Welborn, 994 F.2d 305, 316 (7th Cir. 1993) (noting challenge would lie if evidentiary rules were "to blot out a substantial defense" and direct evidence of the defense was unavailable). While both Chambers and Green are readily distinguishable from the case now before us because direct evidence was available to the defendant to establish the defense, I will also address the applicability of each of the remaining factors.

## Declarations Against Penal Interest

Both Chambers and Green involved hearsay testimony that should have been admissible as a declaration against the declarant's penal interest. The majority is now applying Chambers to a hearsay statement it classifies as a party opponent admission. The majority, however, is unable to cite any authority for applying Chambers and Green to issues involving hearsay statements other than statements against interest. Courts having previously considered the application of Chambers to other classifications of hearsay have not only declined to extend Chambers but have also refused to extend Chambers to cases involving statements by a party. See Gacy, 994 F.2d at 316 (refusing to apply Chambers to party admissions).

While the majority's classification of the hearsay statement is beyond the ambit of Chambers and Green, I believe that the majority erroneously equates the hearsay in this case to a party opponent admission. The majority reaches its conclusion by referring to the victim as a "party." Again, the majority does not cite any law in support of this reasoning. Moreover, the majority's position is inconsistent with both Tennessee law and other jurisdictions that have

10

addressed the issue and held that a victim is not a party to a criminal proceeding. See City of Chattanooga v. Swift, 442 S.W.2d 257, 258 (Tenn. 1969) (defining the term "party" as meaning "one having a right to control proceedings, to make a defense, to adduce and cross-examine witnesses, and to appeal from judgment.").

A victim in a sexual assault case is not a party for purposes of a party opponent admission. In State v. Antillon, 426 N.W.2d 533 (Neb. 1988), the defendant in a child sexual assault case attempted to introduce hearsay statements of the victim. In Antillon, the court addressed whether hearsay evidence of a victim's statement was admissible as a statement of a party. The court held that a sexual abuse victim was not party to the criminal proceeding because the victim did not possess the right "to control the proceedings, to make a defense, to adduce and cross-examine witnesses, and to appeal from the judgment." Id. at 538 (citing City of Chattanooga v. Swift, 442 S.W.2d 257 (Tenn. 1969); Gibbons v. Belt, 33 N.W.2d 374 (Iowa 1948)). Moreover, the common rationales present for admitting statements of a party are inapplicable to the victim of a crime.

I, therefore, disagree with the majority's assertion that a child victim to a sexual assault crime is or should be treated in the same manner as a party for purposes of a party opponent admission. The victim in this case did not possess the right "to control the proceedings, to make a defense, to adduce and cross-examine witnesses, and to appeal from the judgment." See City of Chattanooga, 442 S.W.2d at 258.

### Declarant Unavailable to Testify

In both Chambers and Green, the declarants, i.e., the third parties confessing to the crimes for which Green and Chambers were being tried, were unavailable to testify. Had the declarants been available to testify, the hearsay evidence would likely have been properly excluded. See Gacy, 994 F.2d at 316 (holding when direct evidence is available the constitution does not provide "an accused the privilege of proffering, through hearsay, his self-serving

11

statements. . . ."). A declarant must be unavailable to testify for the declaration against penal interest exception to be applicable.

As noted in the previous section, the victim in this case was a non-party. The declarations against interest exception applies to non-parties. Accordingly, the majority should have analyzed this issue under the exception for declarations against interest. While such an analysis would have met one of the factors of Chambers and Green, the hearsay exception would not apply as the declarant *was* available to testify. State v. Dicks, 615 S.W.2d 126, 129 (Tenn. 1981); Smith v. State, 587 S.W.2d 659, 661 (Tenn. 1978).

**Corroboration or Reliability**

The majority also concludes that because the victim was "analogous to a party" the victim's out-of-court statement was reliable because "such testimony is quite similar to hearsay evidence which is currently admissible under Rule 803 (1.2)(A)." This logic is circular and assumes reliability without examining the content of the statement.

The defendant attempted to proffer hearsay evidence that the eleven-year-old victim had stated that she had previously engaged in sexual intercourse with an adolescent male. In examining the potential veracity or reliability of this statement, one must examine both the content of the statement and the context in which the statement was made. Moreover, one must also consider the age of the declarant in this case.

Children and teenagers may be prone to fabricate or exaggerate both the status of their consensual sexual activity and their sexual prowess. Children may succumb to peer pressure or fabricate stories of sexual promiscuity to be viewed as "cool" or "mature." The mere fact that the victim was a rape victim does not automatically render the victim's hearsay allegations of sexual promiscuity with an adolescent male reliable. The victim simply may have been attempting to impress a friend.

12

The majority further asserts the hearsay statement was "corroborated by the non-hearsay proof" that a defense witness observed the victim kissing and fondling the adolescent male. This evidence is analogous to evidence that the rape shield rule was designed to prohibit. That the victim consented to "kissing and fondling," if true, would not indicate that the victim consented to or did have sexual intercourse with either the adolescent male or the defendant. This evidence corroborates nothing except the fact that the victim had an adolescent boyfriend.

In both Chambers and Green, the Court went through numerous factors that supported persuasive assurance of trustworthiness concerning the hearsay statements. In both cases the declarants had confessed to committing the criminal acts for which the defendants were being tried. The declarant's statements were admissible against the declarants. In Green, the declarant's statement was sufficiently reliable to use against the declarant and to impose a sentence of death. Moreover, considerable direct evidence corroborated the declarants' confessions in Chambers and Green whereas the corroborating evidence in the case now before us is *at best* circumstantial in nature and is irrelevant to the crime charged.[4]

**Preclusion from Presenting Exculpatory Evidence**

Of primary concern to the Court in both Chambers in Green was that the absence of a hearsay exception for declarations against a penal interest precluded the defendants from introducing reliable evidence that others had confessed to committing the crimes for which the defendants were being tried. Such evidence, if believed by a jury, could have the effect of exonerating a defendant in a criminal proceeding. Accordingly, the Court in both Chambers and Green effectively created exceptions to Georgia's and Mississippi's rules against hearsay for declarations against penal interest due to: (1) the exculpatory nature of the third parties' confessions; (2) the confessions'

---

[4]Proper "corroborating evidence" in the case now before us would have been evidence that the witness actually viewed the victim having intercourse with the adolescent male, thereby directly corroborating the veracity of the hearsay statement.

13

persuasive assurances of trustworthiness; and (3) the lack of an evidentiary rule allowing a defendant to introduce evidence of a party's confession to the crime charged.

Unlike the defendants in either Chambers or Green, the defendant in the case now before us was not precluded by the Tennessee Rules of Evidence from introducing evidence of the victim's statement. Pursuant to Tennessee Rule of Evidence 613 the defendant's counsel could have simply elicited from the victim whether she had ever told anyone that she had previously had sexual contact with an adolescent male. The victim could have then either admitted making the statement and explained the content or the circumstances surrounding the statement or the victim could have denied making the statement. If the victim denied making the statement, the defendant could have then introduced the hearsay evidence for impeachment purposes pursuant to Tennessee Rule of Evidence 613. See State v. Martin, 964 S.W.2d 564 (Tenn. 1998). The defendant, however, did not follow the established procedure in Tennessee for introducing this type of evidence. Moreover, the statement was not truly exculpatory in the sense that even if the victim had engaged in prior sexual activity with an adolescent male she still could have been a victim of rape at the hands of the defendant.

**BURDEN ON TRIAL COURTS**

While the majority has not clearly articulated the precise new hearsay exception created by this case, the exception would appear to be as follows:

> The rule against hearsay may be abridged whenever the rule against hearsay excludes evidence that may negate an essential element of the State's case thereby impeding a defendant's ability to present a complete defense.

Such a broad holding is dangerous precedent and places trial judges in a "Catch-22" situation. Hearsay evidence is generally relevant evidence proffered to negate an element of the State's case. The preclusion of *any* evidence that tends to negate an element of the State's case impedes a defendant's ability to

14

present a defense. Accordingly, the majority's analysis and its failure to articulate a precise and narrow exception to be applied in similar cases effectively abolish our rule against hearsay and potentially abolish other evidentiary rules such as the rape shield law which, as a matter of policy, preclude admissibility of specific and relevant evidence.

Trial judges may now face a difficult task in deciding the admissibility of generally inadmissible evidence. Trial judges in a criminal proceeding when faced with proffered hearsay evidence must: (1) decide whether the evidence is hearsay; (2) decide whether the evidence is admissible as an exception to the rule against hearsay; and (3) determine whether the hearsay evidence negates an element of the State's case. If the trial judge admits the hearsay, the trial judge may have committed error by allowing introduction of inadmissible evidence. If the trial judge precludes the hearsay, the trial judge, according to the majority, may have committed reversible error by impeding the defendant's right to present a case. Accordingly, the trial judge faces potential error regardless of the evidentiary ruling. Furthermore, the trial court has neither the appellate court's benefit of hindsight nor a complete trial record with which to determine whether the error of admitting or the error of excluding is egregious error or harmless error.

**CONCLUSION**

Chambers and Green did not technically "trump" a valid rule against hearsay evidence. Both cases operated to create a clearly enunciated and recognized exception to the hearsay rule for declarations against a penal interest. The majority in the case now before us does not create a narrow and ***recognized*** exception to the rule against hearsay for a specific type of testimony or evidence. Absent an articulation of a new exception to the rule against hearsay, the majority has strayed from the analysis in Chambers and Green. Moreover, absent a recognized and articulated exception, the majority is creating an amorphous rule that will abridge an established hearsay rule precluding admission of unreliable and untrustworthy evidence.

15

The proper procedure in the case now before us would have been for trial counsel to ask the victim whether she had ever told anyone that she had previously engaged in consensual sexual activity. Counsel did not do so. Trial counsel, not the trial court, essentially deprived Brown of the opportunity to present an alternative explanation to the jury.

The rule this Court fashions today allows an inadmissible hearsay remark to be introduced and treated as substantive evidence regardless of the veracity of the remark. The testimony in question would not have risen to the level of substantive evidence had defense counsel followed evidentiary procedures. This inconsistency is precisely why Tennessee Rule of Evidence 613 exists and why such evidence should be subject to our established procedure. I, therefore, believe that this Court need not invoke the narrow due process right to present third-party confessions articulated in <u>Chambers</u> and <u>Green</u> merely because trial counsel in the case now before us failed to follow established procedure. <u>See</u> <u>Montana v. Egelhoff</u>, 518 U.S. 37, 42 (1996) (stating relevant evidence may be excluded "on account of a defendant's failure to comply with procedural requirements"). While the majority's result in this case may be desirable, the means to accomplish this desired result at this stage of the proceedings defies precedent and undermines our evidentiary policies of assuring reliable and trustworthy evidence.

For the foregoing reasons, I respectfully dissent.

I am authorized to state that Justice Barker joins in this dissenting opinion.

_____
JANICE M. HOLDER, JUSTICE

16