# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 11, 2010

No. 08-31174

Charles R. Fulbruge III
Clerk

DAVEON MCCULLOUGH,

> Petitioner–Appellant

v.

BURL CAIN, WARDEN, LOUISIANA STATE PENITENTIARY,

> Respondent–Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:05-cv-00674

Before JONES, Chief Judge, and BENAVIDES and PRADO, Circuit Judges.

PER CURIAM:[*]

Daveon McCullough, *pro se*, appeals the district court's denial of his petition for a writ of habeas corpus. A Louisiana jury convicted McCullough of second degree murder and sentenced him to life without the possibility of parole. McCullough argues that the state court infringed his right to due process when it excluded statements provided by his co-perpetrators that did not implicate him in the murder, in violation of *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 08-31174

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we may not grant a writ of habeas corpus with respect to a claim decided on the merits in state court unless the state court's judgment "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."   28 U.S.C § 2254(d)(1).   Because McCullough has not demonstrated that the Louisiana court unreasonably applied *Chambers* to the facts of his case, we affirm the denial of his petition.

## I.  FACTUAL AND PROCEDURAL HISTORY

The details of the brutal murder giving rise to this case, in which a group of young men bludgeoned to death an eighty-two year old woman, are thoroughly recounted in the Louisiana Third Circuit Court of Appeals's opinion affirming McCullough's conviction on direct review.  *See State v. McCullough*, 774 So. 2d 1105, 1108–12 (La. Ct. App. 2000).  At McCullough's trial, the State introduced testimony from Jerry Joseph and William Wansley, both of whom implicated McCullough in the murder.  No other State witnesses testified to McCullough's involvement, and the State did not introduce any physical evidence tying McCullough to the crime.

Joseph was connected to the murder by Fredrick Gradley, who confessed his involvement to police and implicated four others, but did not mention McCullough's involvement.  Upon his arrest, Joseph provided a statement to police that inculpated four others, including McCullough.  Joseph subsequently testified for the State in McCullough's trial pursuant to a favorable plea agreement, and provided the only first-hand account of McCullough's involvement.

The State also introduced the statement of Wansley, who briefly shared a jail cell with McCullough.  Wansley testified that when he asked whether McCullough was entitled to a trial separate from his co-perpetrators,

2

No. 08-31174

McCullough stated that he believed he could "beat the charge," but admitted his involvement in what he described as a gang initiation attack. The State did not promise Wansley any leniency for his testimony, and Wansley testified that he knew nothing of the murder before this conversation with McCullough.

McCullough proclaimed his innocence, asserted an alibi defense, and accused Joseph and Wansley of lying. To bolster his arguments, McCullough, through pre-trial *motions in limine*, sought to introduce the out-of-court statements of Gradley, Fredrick Bush, Cedric Howard, and two others charged with the murder after anticipating that these declarants would assert the Fifth Amendment privilege against self-incrimination if called as witnesses.[1] Gradley, Bush, and Howard had all provided statements to police, none of which implicated McCullough in the crime.

Gradley's statement to detectives inculpated himself and four others, and not only led to the issuance of arrest warrants for those he named, but was also admitted into evidence at his trial, which resulted in a conviction for first degree murder and a sentence of death. Howard, however, denied his involvement in the murder, and instead told police that he had overheard several others discuss their plans to commit the crime before it occurred. Likewise, Bush, whom McCullough described as his "half-brother," gave two statements—one sworn—that attempted to deflect attention from his involvement. He reported that Joseph and one other individual confessed their involvement after the fact and threatened to falsely implicate others if the police caught them. None of these three mentioned McCullough at any point.

The state court deferred ruling on the motions until trial, at which point it denied all five after commenting that it would be unfair to introduce the statements because the State did not have the chance to cross-examine the

---

[1] The Louisiana Court of Appeals limited its consideration to Gradley's, Bush's, and Howard's statements, and they are the only statements currently before us.

declarants. McCullough then called Gradley, Bush, and Howard as witnesses, and all three immediately asserted their Fifth Amendment rights and refused to testify. McCullough's counsel made no attempt to compel their testimony, but instead argued, to no avail, for the introduction of the declarants' prior statements to police.

After his conviction, McCullough argued to the Louisiana Court of Appeals that the trial court erroneously denied his *motions in limine*. The state appellate court recognized that under *Chambers*, a defendant's fundamental right to present witnesses in his own defense may require a court to admit hearsay testimony given "considerable assurance of [the statements'] reliability." *McCullough*, 774 So. 2d at 1124 (alteration in original). It held, however, that because McCullough had failed to establish the reliability of the statements he sought to admit, the trial court did not err when it excluded them. *Id*. at 1125. Subsequently, the Louisiana Supreme Court denied McCullough's petition for state post-conviction relief. *See State v. McCullough*, 806 So. 2d 669 (La. 2002).

McCullough then filed a petition for federal habeas relief in the Western District of Louisiana, asserting, *inter alia*, that the state trial court judge violated his right to put forth a defense and therefore denied him due process of law under *Chambers*. The magistrate judge recommended that the district court grant McCullough habeas relief after concluding that all three excluded statements had sufficient indicia of reliability to meet the *Chambers* standard and tended to support McCullough's asserted innocence. The magistrate judge also concluded that McCullough's state trial court judge erred because the prosecutor's lack of ability to cross-examine witnesses was "not a valid reason for excluding the hearsay statements," and that the state trial court judge should have questioned the witnesses' assertion of privilege and inquired into the reliability of the proffered statements.

No. 08-31174

Initially, the district court adopted the magistrate judge's report and recommendation in its entirety, and granted McCullough a conditional writ of habeas corpus. After two days, however, the district court withdrew the grant for reconsideration, and issued a denial approximately ten months later. After identifying two possibilities for finding that the state court violated McCullough's right to due process—that (1) the declarants did not have a Fifth Amendment privilege and were available to testify, or (2) the state court should have admitted their testimony as an exception to the hearsay rule—the district court discredited both.

Specifically, the district court held that the trial judge had no affirmative duty to probe a witness's assertion of a privilege when the assertion is not facially spurious and where the objecting party's attorney fails to raise the issue. The district court also held that the state court of appeals did not unreasonably apply *Chambers,* nor did it erroneously conclude that the declarants' statements were not reliable enough to give rise to a due process violation. McCullough requested a certificate of appealability ("COA"), which the district court denied. We, however, subsequently granted a COA on the sole issue of whether the exclusion of the statements deprived McCullough of his right to put forth a defense in violation of the Due Process clause. Pursuant to that grant, McCullough appealed the district court's denial of his habeas petition.[2]

## II. STANDARD OF REVIEW

We review the district court's findings of fact for clear error and its conclusions of law *de novo. Schaetzle v. Cockrell,* 343 F.3d 440, 443 (5th Cir. 2003) (citing *Foster v. Johnson*, 293 F.3d 766, 776 (5th Cir. 2002)). Because the state court ruled on the merits of McCullough's claim, AEDPA governs our

---

[2] McCullough's petition also asserted a *Brady* violation and a claim for ineffective assistance of counsel. The district court denied his petition on those grounds as well, and McCullough failed to secure a COA as to those issues.

review and provides that we "must defer to a state court's resolution of questions of law and mixed questions of law and fact unless the state court's 'adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Fields v. Thaler*, 588 F.3d 270, 273 (5th Cir. 2009) (quoting 28 U.S.C. § 2254(d)(1)). "A state court's decision is contrary to clearly established federal law if it 'applies a rule that contradicts the governing law set forth' in Supreme Court cases or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent.'" *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)) (alteration in original).

Likewise, "[a] state court's decision involves an unreasonable application of clearly established federal law if the state court 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 407–08). The Supreme Court has held that "[f]or this standard to be satisfied, the state court decision must have been objectively unreasonable, . . . not just incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 511 (2003) (internal citation omitted). We review only the reasonableness of the state court's ultimate decision, and not the written opinion explaining that decision. *Schaetzle*, 343 F.3d at 443 (citing *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc)).

## III. DISCUSSION

McCullough argues that under the Supreme Court's decision in *Chambers*, the state court's exclusion of the three proffered statements to the police violated his right to put forward a defense. In *Chambers*, a state court barred the introduction of evidence that another individual had confessed to the murder for which the petitioner had been charged. 410 U.S. at 291–92. Specifically, the

petitioner called the declarant, the declarant repudiated his previous four confessions, and the state court barred the petitioner's attempts to challenge the repudiation with evidence of the declarant's prior out-of-court statements. *Id.* at 290–91.

The Supreme Court reversed, noting first that the extent to which the declarant's "sworn confession tended to incriminate him, it tended also to exculpate" the petitioner, because the state's evidence precluded the theory that more than one person committed the murder. *Id.* at 297. Additionally, although the petitioner offered hearsay statements, he did so "under circumstances that provided considerable assurance of their reliability," including that "each of [the petitoner's] confessions was made spontaneously to a close acquaintance shortly after the murder had occurred," that "each one was corroborated by some other evidence in the case," that "each confession . . . was in a very real sense self-incriminatory and unquestionably against interest," and finally, that the declarant "was present in the courtroom and was under oath," and therefore "[h]e could have been cross-examined by the State, and his demeanor and responses weighed by the jury." *Id.* at 300–01. The Court held that the exclusion of "critical" exculpatory evidence accompanied by considerable proof of reliability denied the petitioner "a trial in accord with traditional and fundamental standards of due process." *Id.* at 302.

The *Chambers* Court explicitly limited its holding, stating that "[i]n reaching this judgment, we establish no new principles of constitutional law. . . . Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived [the petitioner] of a fair trial." *Id.* at 302–03. Years later, the Court described *Chambers* as "an exercise in highly case-specific error correction," and noted that "the holding of *Chambers*—if one can be discerned from such a fact-intensive case—is . . . that erroneous evidentiary rulings can, in combination, rise to the level of a due process

violation." *Montana v. Egelhoff*, 518 U.S. 37, 53 (1996). We have further construed *Chambers* as standing "for the limited proposition that 'certain egregious evidentiary errors may be redressed by the due process clause.'" *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998) (quoting *Barefoot v. Estelle*, 697 F.2d 593, 597 (5th Cir. 1983)).

McCullough has not shown that the state court unreasonably applied the *Chambers* holding to the facts of his case. We have described the petitioner's trial in *Chambers* as "a palpable miscarriage of justice" because "the state court had excluded evidence that strongly pointed the finger of guilt at [the declarant]," and the declarant's "inculpation spelled [the petitioner's] exculpation." *Maness v. Wainwright*, 512 F.2d 88, 91 (5th Cir. 1975). In this case, however, none of the excluded testimony clearly exculpated McCullough.

Gradley's sworn confession to police implicated himself, Joseph, and three others in the group murder, but did not mention McCullough's involvement. Significantly, McCullough does not argue that Gradley told police that McCullough was *not* involved; rather, he simply points out that Gradley never mentioned his name. It is unclear from the record whether Gradley intended to exhaustively list his co-perpetrators, and Joseph's statement to police—which implicated McCullough and three others not named by Gradley—suggests that he did not.

Similarly, Bush's and Howard's statements do not exculpate McCullough. Howard mentioned that he overheard several individuals planning the murder, and although he did not mention that McCullough helped plan the crime, he also did not testify as to those who actually carried out the offense. Likewise, Bush's statement recounted a conversation in which two individuals admitted their participation in the murder after it occurred. Although Bush did not mention McCullough, he also failed to mention Gradley—the first to confess his involvement to the police—which detracts from the weight of McCullough's

8

assertion that his absence from Bush's statement exculpated him from the crime.

Additionally, the statements do not share the same "considerable assurance of . . . reliability" that the Supreme Court found persuasive in *Chambers*. 410 U.S. at 300. Bush and Howard gave their statements in an attempt to exculpate themselves; in other words, they were not "in a very real sense self-incriminatory and unquestionably against interest." *Id*. Howard did not provide a sworn statement, and although Bush gave one of his two statements to police while under oath, McCullough describes Bush as his "half brother," which, if anything, raises questions as to the reliability of Bush's failure to mention McCullough's involvement.

Gradley's statement presents a closer question, as his sworn confession to police clearly went against his penal interest. The police found his statement reliable enough to issue warrants for the arrest of those he implicated, and the state court found it reliable enough to introduce against him at his trial. On the other hand, Gradley's assertion of his Fifth Amendment privilege rendered him unavailable as a witness and thus not subject to cross-examination, which prevented the State from examining the veracity or accuracy of his confession.[3] These distinctions convince us that McCullough has not demonstrated that the state court unreasonably applied *Chambers*'s narrow holding.

---

[3] McCullough also makes a conclusory remark that the trial judge erred by failing to question Gradley, Bush, and Howard as to whether the had correctly asserted their Fifth Amendment privileges. The three declarants had already been convicted and sentenced to death for their participation in the murder, and because Gradley and Howard's convictions and sentences had been affirmed by the Louisiana Supreme Court, it appears that they may not have had a valid Fifth Amendment privilege to assert. *See State v. Smith*, 687 So. 2d 529, 542 (La. Ct. App. 1996). At trial, however, McCullough did not object to their assertion of privilege, and on appeal, he does not cite any caselaw suggesting that the trial judge had an affirmative duty to investigate the declarants' assertion more thoroughly. Assuming that an error occurred, however, we note that it would not rise to the level of a due process violation warranting habeas relief, largely because McCullough has not argued that any testimony at trial by declarants would exculpate him.

No. 08-31174

## IV. CONCLUSION

After reviewing the state courts's ultimate conclusion on McCullough's *Chambers* claim, we cannot say that it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C § 2254(d)(1). Because the statements McCullough proffered had neither the exculpatory effect nor the indicia of reliability necessary to the *Chambers* holding, McCullough has not demonstrated a due process violation. We therefore affirm the district court's order denying his petition for habeas relief.

AFFIRMED.