IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 22, 2008

Charles R. Fulbruge III
Clerk

No. 08-70005

YOSVANNIS VALLE

Petitioner-Appellant

V.

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent-Appellee

Appeal from the United States District Court
for the Southern District of Texas
4:06-cv-03867

Before WIENER, GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Yosvannis Valle was convicted of murder and sentenced to death. The district court denied his Petition for Writ of Habeas Corpus, denied a certificate of appealability, and granted respondent Nathaniel Quarterman's Motion for Summary Judgment. Valle now seeks a certificate of appealability ("COA") to appeal the district court's denial of habeas relief on three claims: (1) his Sixth

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Amendment right to counsel was violated when his trial counsel failed to obtain a psychological evaluation of him by a mental health professional and present evidence of his post-traumatic stress disorder ("PTSD"); (2) he was denied due process by the trial court's exclusion as inadmissible hearsay of the audio and transcript of an interview with petitioner's mother; (3) his Eighth Amendment rights were violated by Texas's capital-sentencing statutory scheme, because it does not assign a burden of proof to the mitigation special issue and does not afford meaningful appellate review to the special issues of mitigation and future dangerousness.

I

Yosvannis Valle seeks habeas corpus relief from his capital conviction for the murder of Jose "Yogi" Junco. The jury found Valle guilty of capital murder for intentionally causing Junco's death while in the course of committing or attempting to commit robbery.

At the penalty phase of Valle's trial, the State presented evidence of Valle's previous time in prison, as well as evidence linking Valle to three other murders. The State demonstrated that Valle was a sergeant in a prison gang called La Raza Unida and that he had possession of a "shank," or homemade knife, during his pretrial detention.

Valle presented evidence that he had been exposed to several family-risk factors as a child growing up in Cuba. Dr. Richard Cervantes, a clinical psychologist, testified that Valle had witnessed his mother forced in various sexual acts by multiple partners, and that Valle was himself the victim of physical abuse and severe poverty that led to his exhibiting aggressive behavior later in life. Dr. Cervantes relied on his interviews with Valle and tapes of interviews conducted with Valle's mother and other relatives in Cuba by Dr. Cervantes's research assistant Edurna Imana. Valle offered into evidence a videotaped interview with those relatives, but the trial court ruled that the

statements contained on the tape were inadmissible hearsay and ordered the tape played without sound. Instead, Valle played the video portion of the tape and Imana narrated its contents for the jury.

Valle's brother Gabriel also testified as to the abusive circumstances of their childhood in Cuba. Gabriel testified that their mother had attempted suicide several times and that her boyfriends were violent towards her and her sons.

The jury unanimously answered affirmatively to the questions of whether the State proved beyond a reasonable doubt that: (1) Valle actually caused Junco's death, intended to kill Junco, or anticipated that human life would be taken; and (2) Valle would commit future criminal acts of violence constituting a continuing threat to society. The jury also unanimously concluded that the mitigating evidence was insufficient to justify a life sentence. The trial court subsequently sentenced Valle to death.

The Texas Court of Criminal Appeals affirmed the conviction and sentence and denied a writ of habeas corpus. Valle timely filed a petition for habeas corpus in the District Court on 14 claims. Respondent Quarterman moved for summary judgment. The District Court granted summary judgment, denied the writ, and denied a COA. Valle now appeals for a COA from this court.

## II

In order to appeal the district court's denial of habeas relief, Valle must be granted a COA as a "jurisdictional prerequisite." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). A COA issues only if Valle makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Tennard v. Dretke, 542 U.S. 274, 282 (2004). The district court denied Valle's constitutional claims on the merits. Thus, Valle must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed

further." Miller-El, 537 U.S. at 327 (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). A COA determination consists of an overview of the habeas claims and a general assessment of their merits; we do not at this stage fully consider the factual or legal bases that support the claims. Id. at 336.

We review the district court's resolution of Valle's claims under the deferential standard of the Antiterrorism and Effective Death Penalty Act (AEDPA). Tennard, 542 U.S. at 282; Leal v. Dretke, 428 F.3d 543, 548 (5th Cir. 2005). Under the AEDPA, a petitioner is granted relief on any issue adjudicated in a state court proceeding only if (1) the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court"; or (2) the state court decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see also Reed v. Quarterman, 504 F.3d 465, 471 (2007).

Finally, "any doubt as to whether a COA should issue in a death penalty case must be resolved in favor of the petitioner." Pippin v. Dretke, 434 F.3d 782, 787 (5th Cir. 2005).

## A

Valle first seeks a COA on the issue of whether Valle's Sixth Amendment right to counsel was violated by his trial counsel's failure to obtain a psychological evaluation of him by a mental health professional and offer evidence of Valle's PTSD.

We evaluate an ineffective-assistance-of-counsel claim under the two-pronged test set out in Strickland v. Washington, 466 U.S. 668 (1984). First, Valle must show that his attorney's performance was deficient. The court measures deficiency against an objective standard of reasonableness. Id. at 2064. In assessing the performance of trial counsel under Strickland, we accord deference to the strategic decisions made by counsel, endeavoring to "eliminate

the distorting effects of hindsight," Harrison v. Quarterman, 496 F.3d 419, 424 (5th Cir. 2007)(quoting Strickland, 466 U.S. at 690-91), and applying the presumption that counsel's performance "falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Second, Valle must show that the deficient performance prejudiced his defense. Id. at 687. Prejudice is found when "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceedings would have been different." Smith v. Quarterman, 515 F.3d 392, 404 (5th Cir. 2008)(citing Dowthitt v. Johnson, 230 F.3d 733, 743 (5th Cir.2000)). Where the prejudice inquiry takes place in the context of a capital-sentencing hearing, the relevant question is whether "there is a reasonable probability that, absent the errors, the sentencer... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Strickland, 466 U.S. at 695.

Valle argues that his trial counsel should not have relied solely on the evidence provided by Dr. Cervantes as to the risk factors affecting his childhood development and should have obtained a thorough examination of Valle by a mental health professional. After trial, Valle was evaluated by Dr. Paula Lundberg-Love, a psychologist who concluded that Valle suffered from PTSD stemming from his childhood abuse. Dr. Lundberg-Love opined that the symptoms of PTSD would cause Valle to take extreme measures to protect himself and to lash out at perceived threats. Valle contends that this evidence would have swayed a jury to find that mitigation to a life sentence was justified.

Valle's trial counsel made the judgment not to obtain a psychological evaluation before trial because of the possibility that the state trial court would order a state-sponsored psychological examination pursuant to Lagrone v. State, 942 S.W.2d 602 (Tex. Crim. App. 1997). As the state court found,[1] and the

---

[1] The state appeals court issued a summary order affirming the trial judge's findings of fact and conclusions of law as to Valle's habeas petition. These findings and conclusions did

district court affirmed, the trial counsel was justifiably concerned that such an examination would reveal evidence regarding Valle's violent behavior that would damage his mitigation case. Valle v. Quarterman, No. H-06-cv-3867, 2008 WL 416241, *11 (S.D. Tex. 2008). Valle's attorney instead put forth the evidence of Dr. Cervantes as to Valle's childhood, much of which was mirrored in Dr. Love's findings. The state court concluded that Dr. Cervantes's evidence, which included interviews with Valle's relatives conducted in Cuba by his research assistant, was thorough enough to warrant the decision by trial counsel not to pursue a formal psychiatric evaluation. Valle's trial counsel's decision was reasonable, and does not meet the standard for deficiency under the performance prong of Strickland.

The decision by trial counsel not to have Valle examined by a mental health professional also did not prejudice Valle's defense. Dr. Love's examination elicited information about Valle's childhood in Cuba that for the most part had already been addressed in Dr. Cervantes's trial testimony. The only additional evidence that might have been derived from a pre-trial psychiatric evaluation is the diagnosis of PTSD, which the district court noted could just as easily have led the jury to conclude that Valle's tendencies to lash out violently constituted an ongoing threat to society. Valle, 2008 WL 416241, at *13. The utility of the evidence about his mental health disorders is thus marginal considered in light of the fact that it might have subjected Valle to cross-examination about his ability to restrain his violent impulses. Valle has failed to show a reasonable probability that the inclusion of the evidence of his mental health disorders would have led to a different outcome. The district

not result from an evidentiary hearing but were essentially adopted from the State's brief; however, the State submitted an affidavit from Valle's trial counsel confirming that the decision not to use psychological evidence was a strategic one in light of Valle's erratic and violent tendencies and the State's expressed desire to examine Valle pursuant to Lagrone. Aff. of David Cunningham, Tr. R. 128.

court was correct in affirming the state court's rejection of Valle's ineffective assistance of counsel claim. Reasonable jurists could not disagree with the district court's resolution of this question.

B

The trial court excluded as inadmissible hearsay the audio portion of an interview conducted with Valle's mother in Cuba. The court also excluded a transcript of that interview. Valle makes two arguments with respect to the exclusion of the audio and transcript: one, that they should have been admitted under an exception to the hearsay rule; and two, that Valle's constitutional interest in producing the mitigation evidence outweighed the State's interest in enforcing its hearsay rule.

Valle appears to argue that the interview audio and transcript fall into two exceptions to the hearsay rule: the "unavailability exception" and the basis-of-expert-testimony exception. However, we are not in a position to evaluate this claim as Valle failed to include any citation to relevant authorities or analysis. See Pet'r's Br. 20-22. The invocation of the expert-testimony exception appears once and is not mentioned again in the brief. Because Valle failed to advance any arguments in support of the issue, we consider the issue abandoned. See Justiss Oil Co., Inc. v. Kerr-McGee Ref. Corp., 75 F.3d 1057, 1067 (5th Cir. 1996); see also FED. R. APP. P. 28 (requiring the brief to contain, inter alia, "the argument, which must contain...appellant's contentions and the reasons for them, with citations to the authorities and part of the record on which the appellant relies. . .")

Even if this issue had been properly briefed, Valle would still not succeed on the merits. The district court reviewed the state habeas findings as to the basis-of-expert-testimony exception in its opinion. There, Valle argued that the interview testimony should have been included because Dr. Cervantes relied on

7

it for his expert opinion as to the effects of Valle's childhood.[2]  The state appeals court found that the trial court had not committed an abuse of discretion in excluding the audio and transcript, as there was a substantial risk that the jury would treat the videotaped hearsay statements as substantive evidence rather than information relied upon by the expert in formulating his opinion.  Valle, 2008 WL 416241, at * 8; Valle v. State, 109 S.W.3d 500, 505-06 (Tex.Crim.App. 2003).  The district court found, and we agree, that Valle has not shown that the state appellate court's application of the Texas evidentiary rule was incorrect.

Valle's discussion of the "unavailability exception" to the hearsay rule omits any reference to Texas evidence law, and ultimately does not actually appear to argue that a hearsay exception applies.  Instead, the brief states that the audio and transcript of the interview with Valle's mother verify other testimony about Valle's childhood and that their exclusion "allowed the State to argue to the jury that there was no credible mitigating evidence produced by Petitioner."  Pet'r's Br. 21-22.  Valle appears to reiterate the claim he raised before the district court; namely, that the evidence is admissible under the "Statement of Personal or Family History" exception found in Texas Rule of Evidence 804, which requires a showing of unavailability.[3]   TEX. R. EVID.

---

[2] Rule 705(d) of the Texas Rules of Evidence provides:

> When the underlying facts or data would be inadmissible in evidence, the court shall exclude the underlying facts or data if the danger that they will be used for a purpose other than as explanation or support for the expert's opinion outweighs their value as explanation or support or are unfairly prejudicial.

[3] Texas Rule of Evidence 804(b)(3) states the following as exceptions to the hearsay rule where the declarant is unavailable as a witness :

> (A) A statement concerning the declarant's own birth, adoption, marriage, divorce, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of personal or family history even though declarant had no means of acquiring personal knowledge of the matter stated; or

8

804(b)(3). Valle cannot prevail on this claim. Both the Texas Court of Criminal Appeals and the district court properly applied Rule 804(b)(3), which only allows statements about the fact of "birth, adoption, marriage, divorce, legitimacy, relationship by blood, adoption, or marriage, ancestry," or other similar facts. The rule does not cover the interview testimony of Valle's mother, which dealt with, among other things, her medical problems, Valle's childhood abuse, and his problems with authority. Valle, 2008 WL 416241, at *7. Valle's claim that a hearsay exception applies therefore does not merit the grant of a COA.

As an alternative to his hearsay exception claim, Valle argues that he has a due process interest in being able to provide evidence and witnesses on his behalf, and that this interest outweighs the state's competing interest in enforcing the hearsay rule. Valle relies primarily upon Chambers v. Mississippi, 410 U.S. 284 (1973), which held that the application of the hearsay rule could not be applied mechanistically where constitutional rights directly affecting the determination of guilt are implicated. Id. at 302. The Court extended this holding to the capital-sentencing context in Green v. Georgia, 442 U.S. 95 (1979), finding that application of Georgia's hearsay rule violated due process where the excluded evidence was "highly relevant to a critical issue in the punishment phase of the trial… and substantial reasons existed to assume its reliability." Id. at 97.

The district court engaged in a careful analysis that distinguished Chambers and Green from this case. In both of those cases, there were strong indicia of reliability, including (1) the existence of corroborating evidence; (2) the

---

(B) A statement concerning the foregoing matters, and death also, of another person, if the declarant was related to the other by blood, adoption, or marriage or was so intimately associated with the other's family as to be likely to have accurate information concerning the matter declared.

fact that the statements at issue were made spontaneously to close acquaintances after the murders; and (3) the fact that the statements were "unquestionably against [the] interest" of the declarants. See Valle, 2008 WL 416241, at * 9 (citing Green, 442 U.S. at 96-97; Chambers, 410 U.S. at 299-300). No comparable indicia are present here.

This court has also limited Chambers and Green to their facts and has interpreted them to mean that "certain egregious evidentiary errors may be redressed by the due process clause." Edwards v. Scroggy, 849 F.2d 204, 212 (5th Cir. 1988); see also McGinnis v. Johnson, 181 F.3d 686, 693 (5th Cir. 1999) (holding that exclusion of hearsay testimony of expert psychologist during punishment phase of trial was not "unnecessarily limiting, nor did it operate to render [the] trial fundamentally unfair"). As reasonable jurists would not disagree that there is nothing "fundamentally unfair" about the exclusion of Valle's mother's hearsay testimony, we must deny a COA on this issue.

C

Valle also petitions for a COA to appeal the district court's decision on the constitutionality of Texas's death penalty scheme, arguing that the "mitigation special issue allows the state to introduce evidence that supports an affirmative finding of future dangerousness without a burden of proof." Pet'r's Br. 30. This is a misstatement, as the mitigation special issue is distinct from the future-dangerousness special issue. Valle appears to argue that the mitigation special issue is unconstitutional under Apprendi v. New Jersey, 530 U.S. 466 (2000) and Ring v. Arizona, 536 U.S. 584 (2002) because it does not require the State to prove beyond a reasonable doubt the absence of those mitigating factors that would warrant life imprisonment.

10

Under TEX. CODE CRIM. PROC. ANN. art. 30.071 §2(e), the jury is asked to answer the following mitigation special issue:

> Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment without parole rather than a death sentence be imposed.

See TEX. CODE CRIM. PROC. ANN. art. 37.071 § 2(e)(1) (Vernon 1999). If the jury answers the special issue in the negative, the trial court must sentence the defendant to death. If the jury answers in the affirmative or is unable to answer the issue, the statute requires the trial court to sentence the defendant to "confinement in the institutional division of the Texas Department of Criminal Justice for life imprisonment without parole." See id. § 2(g) (Vernon 1999). Valle argues that this scheme means that the State can increase the defendant's authorized punishment from life imprisonment to death "contingent on" a negative answer to the mitigation special issue and is thus required by Apprendi and Ring to prove the absence of mitigating factors beyond a reasonable doubt.

The Texas Court of Criminal Appeals denied Valle's claim on the basis of Prystash v. State, 3 S.W.3d 522, 535-36 (Tex. Crim. App. 1999), which held that the lack of burden of proof requirement in the mitigation special issue was constitutional, as it does not lessen the State's burden to prove the elements of the capital offense and any aggravating circumstances. While Valle raised a slightly different issue before the district court– focusing on the use of victim impact evidence to rebut mitigation evidence offered by the defendant– the district court found the arguments foreclosed by our precedent.

In Rowell v. Dretke, 398 F.3d 370 (5th Cir. 2005), we held that "no Supreme Court or Circuit precedent constitutionally requires that Texas's

11

mitigation special issue be assigned a burden of proof." Id. at 378. "Reasonable jurists would not debate the district court's dismissal of this claim as it has been previously rejected in both state and federal court, and is not supported by Supreme Court authority." Scheanette v. Quarterman, 482 F.3d 815, 828 (5th Cir. 2007); see also Granados v. Quarterman, 455 F.3d 529, 536-37 (5th Cir. 2006), cert. denied, 127 S.Ct. 732 (2006). We therefore may not grant a COA to Valle on this issue.

Valle also appears to claim that the mitigation issue and future-dangerousness special issues are unconstitutional because they are not subject to meaningful appellate review. The district court properly rejected both arguments. Valle's claim that the mitigation special issue is unconstitutional is foreclosed by this court's holding in Moore v. Johnson, 225 F.3d 495 (5th Cir. 2000) that Texas's special mitigation issue complies with Supreme Court precedent stating that sentencers are to be given "unbridled discretion" in considering mitigating factors. Id. at 506-07 (quoting Tuilaepa v. California, 512 U.S. 967, 979-80 (1994)). The argument that the future dangerousness issue cannot be meaningfully reviewed also holds no water. The district court pointed to several factors that are the basis for an appellate court to review a jury's consideration of the future-dangerousness issue. Valle, 2008 WL 416241, at * 16 (citing Keeton v. State, 724 S.W.2d 58, 61 (Tex.Crim.App. 1987).

For the foregoing reasons, Valle's petition for a Certificate of Appealability is DENIED.